## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Virtus Pharmaceuticals, LLC<br><br>*Plaintiff*,<br><br>v.<br><br>Merrick Garland, *et al.*,<br><br>*Defendants*. | Case No. 1:21-cv-02308 |

## <u>DECLARATION OF MICHAEL C. MILLS</u>

I, Michael C. Mills, under the penalty of perjury, declare and state as follows:

1. I am currently employed as a Group Supervisor with the United States Drug Enforcement Administration (DEA). I have been a Group Supervisor for approximately three years, and have been employed by DEA for approximately 11 years. I am currently stationed with DEA's Houston Field Division.

2. I am submitting this Declaration in support of the Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Temporary Restraining Order in the above-captioned matter. Based on the information provided to me in my official capacity, I am familiar with the administrative investigation into Woodfield Distribution (Woodfield); the service of the Order to Show Cause and Immediate Suspension of Registration (OTSC/ISO) on August 11, 2021; and the sealing and maintenance by DEA of the controlled substances possessed by Woodfield. The statements contained in this Declaration are known to me as a result of my own involvement in the decision-making process or have been provided to me by other enforcement personnel.

**Administrative Investigation**

3. As part of its administrative investigation into Woodfield, DEA became aware that Virtus was one of the customers for whom Woodfield purportedly acted as a third party logistics provider (3PL). DEA understood that as a 3PL, Woodfield provided Virtus supply chain operation services, including warehousing, storage, and distribution of Virtus's controlled substances. The contract between Virtus and Woodfield, which DEA obtained in the course of its administrative investigation, is attached to this declaration as **Exhibit A**.

4. On April 1, 2021, as part of its investigation into Woodfield, the DEA Houston Field Division issued an administrative subpoena to Virtus Pharmaceuticals (Virtus). The purpose of the administrative subpoena was to obtain additional evidence from Virtus to support the administrative investigation into Woodfield.

5. Between March 29, 2021, and July 7, 2021, DEA Diversion Investigator (DI) Ian Brecht – a Diversion Investigator whom I supervise – corresponded via phone and email with Virtus's attorney, David Schumacher of Hooper, Lundy & Bookman, P.C., regarding DEA's administrative subpoena to Virtus. In response to the subpoena, Virtus provided DEA multiple datasets focused on sales and concealed shortages or potential diversion of controlled substances involving Woodfield.

6. At one point during the email correspondence, Mr. Schumacher asked DI Brecht for the contact information of the Assistant United States Attorney (AUSA) assigned to the case. In response, DI Brecht informed Mr. Schumacher that "[t]he information requested from Virtus is tied to multiple cases each with different AUSAs and DOJ attorneys from various districts so I would

not be able to share one single contact." The e-mail correspondence between DI Brecht and Mr. Schumacher is attached to this declaration as **Exhibit B**.

## Service of the OTSC/ISO

7.  On August 4, 2021, the DEA Administrator issued an Order to Show Cause and Immediate Suspension of Registration (OTSC/ISO) to Woodfield.

8.  On August 11, 2021, DEA Special Agents and Diversion Investigators from the DEA Houston Field Division served the OTSC/ISO on Woodfield. Upon serving the OTSC/ISO, DEA sealed all of the controlled substances in Woodfield's possession pursuant to the above-noted Certificates of Registration by directing Woodfield to deliver those controlled substances to authorized agents of DEA as per 21 C.F.R. § 1301.36(f)(1). DEA sealed and removed approximately 754 pallets of controlled substances – or approximately 200 million dosage units – which include, among others, levorphanol (a Schedule II opioid); codeine phosphate (a Schedule II opioid); phendimetrazine (a Schedule III stimulant); tramadol (a Schedule IV opioid); phenobarbital (a Schedule IV barbiturate); guaifenesin with codeine (a Schedule V cough suppressant); clobazam (a Schedule IV benzodiazepine); and quazepam (a Schedule IV benzodiazepine).

9.  Between August 11, 2021, and August 13, 2021, the DEA Houston Field Division removed these sealed controlled substances from the Woodfield facilities for storage and safekeeping. The controlled substances were transported by the DEA Houston Field Division on 29 tractor-trailers and five box trucks to four separate, undisclosed DEA facilities.

**Hardships with Releasing Millions of Dosage Units of Sealed Controlled Substances**

10. DEA has removed and sealed approximately 200 million dosage units of controlled substances for storage and safekeeping pursuant to the OTSC/ISO issued to Woodfield.

11. As an initial matter, DEA cannot release any controlled substances to Virtus because Virtus is not registered with DEA to handle controlled substances. If ordered to do so, DEA can only release the controlled substances to an entity registered with DEA to handle the controlled substances at issue. Due to the large quantity of controlled substances placed under seal, their storage in multiple secure DEA facilities, and the unique circumstances of this case, any release of the controlled substances to any registered entity would present a significant hardship and challenge for DEA.

12. *First*, allowing any registered distributor to pick up the controlled substances at issue from DEA's facilities would impose significant operational burdens and require substantial resources from DEA.

13. The precise locations of DEA's facilities are sensitive law enforcement information. DEA's facilities store a multitude of controlled substances and other evidence, associated not only with this OTSC/ISO, but also with a host of other DEA cases. Disclosing the precise locations of these facilities to any entity who is not associated with DEA would place all of the other evidence DEA has stored in its facilities for safekeeping at significant risk.

14. To mitigate this risk in the event of a disclosure, multiple DEA personnel would have to take time out of their other investigatory duties to supervise any non-DEA personnel who would pick up the sealed controlled substances from DEA's facilities.

15. **Second**, requiring DEA to transport the sealed controlled substances to another DEA-registered entity would also impose significant burdens. Due to the quantity of sealed controlled substances removed, and their storage at multiple DEA facilities, DEA would need to fund multiple trucks and drivers to transport the at-issue controlled substances to another registered DEA entity. Additionally, according to DEA policies and procedures, a substantial number of DEA personnel would be required to travel to escort and guard the transporting trucks while they remain in DEA custody, which would separate these personnel from their other investigatory duties.

16. Furthermore, DEA would be potentially liable for any thefts or losses that occur during transport. And if there are multiple DEA-registered entities to whom DEA would have to deliver the at-issue controlled substances, the financial and resource burdens of such transport increase substantially.

17. **Third**, whether DEA is tasked with transporting the controlled substances or is required to open its facilities for a registered entity to retrieve them, DEA would experience significant operational and logistical challenges.

18. Currently, the levorphanol and phendimetrazine products removed from Woodfield are stored across three different DEA facilities. Moreover, these levorphanol and phendimetrazine products are packaged in multiple pallets shared with other controlled substances not at issue. Retrieving the levorphanol and phendimetrazine would require DEA personnel to pull out hundreds of pallets from each different facility to separate out the levorphanol and phendimetrazine for release.

5

19. In addition, requiring DEA to release the controlled substances would essentially task DEA with some of the drug distribution functions DEA is supposed to regulate, but not necessarily perform. For instance, in the course of distributing controlled substances, all distributors registered with DEA must design and operate a system to disclose suspicious orders of controlled substances. 21 C.F.R. § 1301.74(b). As a result, before authorizing any controlled substances for release, DEA would be required to perform suspicious order monitoring functions to ensure that none of the controlled substances it releases have the potential for being diverted to illicit channels. In this case, DEA does not have the capacity to perform these functions for the levorphanol and phendimetrazine. It is also not clear DEA should perform these suspicious order monitoring functions, at least in this situation, as the Controlled Substances Act (CSA) places that burden on the *registrant* to perform. *See* 21 U.S.C. § 832; 21 C.F.R. § 1301.74(b).

20. Moreover, because Virtus is not registered with DEA to handle controlled substances, Virtus is not familiar with and cannot perform these required due diligence and suspicious order monitoring functions itself. To illustrate, one of Virtus's top five levorphanol customers surrendered their DEA registration for cause in June 2021 related in part to their handling of levorphanol.

21. *Finally*, requiring DEA to release controlled substances in this case would create a precedent that would significantly harm DEA's future enforcement capabilities. As a regulator, DEA must treat all registered entities similarly. Requiring the release of controlled substances in this particular instance at the request of a third party not named in the OTSC/ISO creates a precedent whereby DEA will be forced to provide the same treatment to any other third party

claiming an ownership interest in any controlled substances sealed pursuant to any OTSC/ISOs DEA issues in the future. As explained above, this would impose significant operational, logistical, and resource burdens, impinging on DEA's ability to take future enforcement actions against non-compliant registrants. These are additional and significant burdens DEA cannot afford as it exercises its broad authority to prevent the diversion of pharmaceutical drugs for illicit use.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed this  3rd day of September, 2021 at Houston, Texas.

/s/ *Michael Mills*

Michael C. Mills

7

# EXHIBIT A

## 3PL SERVICES AGREEMENT

This 3PL SERVICES AGREEMENT ("Agreement"), dated as of August 10, 2017, is between Woodfield Distribution, LLC, ("WD") located at 951 Clint Moore Road, Suite A, Boca Raton, FL 33487 ("WD"), and Virtus Pharmaceuticals, LLC (Delaware) located at 12 Penns Trail, New Town, PA 18940 and Virtus Pharmaceuticals OpCO II located at 1321 Murfreesboro Road, Suite 540, Nashville, TN 37217 ("VP") which replaces all previous agreements between the companies.

WHEREAS, WD is in the business of providing third-party logistics ("3PL") services to health care and pharmaceutical companies, including warehousing, storage and distribution services.

WHEREAS, VP is a manufacturer and distributor of pharmaceutical products.

**Section 1.    WD Obligations**

1.1    **Description of 3PL Services Offered.** WD offers to provide the following services to VP according to commercially-reasonable standards (the "3PL Services") solely as requested by VP:

(a)    Inventory management, including, without limitation, warehouse, storage, fulfillment, order-processing and quarantine functions;

(b)    Distribution, handling and shipment of pharmaceutical products;

(c)    Assistance with various federal and state pedigree and product-tracking compliance;

(d)    Assistance with third-party agents of VP in information technology, transportation, reverse-distribution and recall-related services;

(e)    Provision of daily, weekly, monthly and as otherwise requested, concerning service levels provided by WD; and

(f)    Any other services reasonably requested by VP.

1.2    **Description of Facilities.** The 3PL Services to be provided by WD will be undertaken solely at the facilities located at 1113 Gillingham Lane, Suite A, Sugar Land, TX 77478 and 951 Clint Moore Road, Suite A, Boca Raton, FL 33487 (the "Facilities").

1.3    **Regulatory Compliance.** WD will obtain and maintain all licenses and otherwise comply with all applicable federal and state laws, regulations, and rules necessary to perform the 3PL Services throughout the United States, including, without limitation, those relating to the U.S. Food and Drug Administration, U.S. Drug Enforcement Administration, Florida Department of Business and Professional Regulation, and other individual state boards and agencies as required. WD will acquire and maintain all necessary permits, licenses, and other federal, state or local authorizations required to perform the 3PL Services and will furnish copies of these to VP upon WD's receipt and at any time upon VP's request. WD will notify VP within five (5) business days if it receives notice from any federal or state agency regarding WD's noncompliance with applicable laws or regulations.

1.4     **Product**. WD will offer the 3PL Services with respect to the products set forth on Exhibit A (each being referred to as a "Product," and collectively as the "Products"), which may be amended to add or remove a Product as agreed to by the parties in writing.

**Section 2.     VP Obligations**

2.1     **Regulatory Compliance**. VP represents and warrants that its products and activities for which it requests WD to process as part of its 3PL Services will comply with all applicable federal and state laws and regulations.

2.2     **Use of 3PL Services**. Notwithstanding anything in this Agreement to the contrary, the 3PL Services are provided on a non-exclusive basis such that VP will be free to have such services provided by other logistic services providers or itself conduct such services. VP will have no minimum use obligations or any other obligation to use the services offered by WD under this Agreement.

**Section 3.     Prices and Payments**

3.1     **Price**. The price for each type of service is shown on Exhibits B, C and D.

3.2     **Price Changes**. The prices on Exhibits B, C and D dated as of the Effective Date will be effective from July 1, 2017 until the first anniversary of the Effective Date.

3.3     **Billing and Payment**. WD will invoice VP on a monthly basis. VP will pay all invoices within thirty (30) days of receipt. Each invoice will contain sufficient detail to enable VP to determine the type and extent of 3PL Services performed for the billing period.

**Section 4.     Term and Termination**

4.1     **Term and Extension Term(s)**. This Agreement will be for an initial term of one (1) year commencing on the Effective Date ("Initial Term"). It will automatically renew for successive one (1) year ("Extension Terms") on the same terms and conditions unless either party gives written notice to the other of its intention not to renew the Agreement no later than ninety (90) days prior to the expiration of the then current term. Notwithstanding the effectiveness of this Agreement, the Effective Date shall mean the date mutually agreeable between the parties when WD can commence providing the 3PL Services.

4.2     **Termination Prior to Expiration**. This Agreement may be terminated prior to the expiration of its Initial Term or any Extension Term:

(a)     At any time, pursuant to the written agreement of the parties;

(b)     By either party by notice to the other in the event such other party will (i) dissolve, (ii) cease active business operations relating to the activities that are the subject of this Agreement (that is, the party need not have ceased all business operations), (iii) have been determined to be insolvent by a court of competent jurisdiction, (iv) commence bankruptcy, insolvency or reorganization proceedings, or such proceedings will have been brought against such other party and remained undismissed for a period of thirty (30) days, or (v) such other party will have made a general assignment for the benefit of creditors, or a receiver of all or substantially all of such other party's assets will have been appointed and not discharged within thirty (30) days;

2

(c)     By WD on written notice to VP if VP fails to make any payment within sixty (60) days of the date that it is due, unless the unpaid amounts are subject to a legitimate dispute; or

(d)     By either party in the event of a breach or default by the other of any material obligation, covenant, agreement, condition, representation or warranty in this Agreement, after expiration of sixty (60) days written notice to cure, unless such opportunity to cure is not possible.

4.3     **Survival of Terms**. The following terms will survive any termination of this Agreement: Section 3.3 (Billing and Payment) to the extent that there are unbilled and unpaid amounts; Section 6 (Indemnification and Limitation of Liabilities); Section 8 (Confidentiality); Section 9 (Disputes); Section 11 (General).

**Section 5.     Regulatory Compliance, Records and Audits**

5.1     **Regulatory Compliance**. Each party represents and warrants that it will not knowingly engage in any actions or omissions concerning its compliance with applicable regulations, which, in turn, would materially restrict or impede the other party's ability to comply with its own regulatory requirements or to pursue to its commercial and business purposes.

5.2     **Recordkeeping**. WD will maintain complete and accurate records in compliance with all applicable recordkeeping, documentation, and manifesting requirements of state and federal law or as may be reasonably required by VP. The records will include, but will not be limited to, personnel records, correspondence, instructions, plans, receipts, vouchers, copies of manifests and tracking records and any other records or reports or memoranda consistent with and for the periods required by applicable regulatory requirements and guidelines pertaining to storage, handling, transportation, transfer, and destruction of any Products handled by WD as part of the 3PL Services.

5.3     **Audits**. WD will cooperate with all audits conducted or performed by VP and complete access to its books, records, and employee's necessary for VP to complete the audit. VP will disclose the results of its audits to WD to enable WD to confirm its regulatory and contract compliance and to ensure VP's continued satisfaction with the 3PL Services. In the event WD receives notice of inspection or audit by any governmental agency, it will provide immediate notice to VP, in advance when and where practicable.

**Section 6.     Indemnification and Limitation of Liabilities**

6.1     **Indemnification by WD**. WD will, at its sole cost and expense, defend, indemnify and hold VP and its affiliates and their respective officers, directors, agents and employees harmless from and against any third-party losses, claims, liabilities, obligations, expenses and/or damages (including without limitation reasonable attorneys' fees) and expenses associated with any recall, withdraw or cease of distribution of Products (collectively, "Claims") to the extent that such Claims arise out of or in connection with, result from, or are caused by: (i) the negligence, recklessness, willful misconduct or fraud of WD or its employees or authorized agents in connection with the execution and/or performance of this Agreement; (ii) any breach by WD of any of its representations, warranties, obligations, or covenants contained in this Agreement; (iii) WD's regulatory activities and compliance, or WD's distribution, storage, handling, or shipment of Product; or (iv) any allegation that the performance of the 3PL Services, or any aspect thereof,

3

infringes upon or violates any patent, copyright, trade secret, trademark or other proprietary right of any third party; provided, however, that WD will have no liability or indemnification obligations to VP to the extent any such Claim is caused by the negligence, recklessness, willful misconduct or fraud of VP.

6.2 **Indemnification by VP**. VP will, at its sole cost and expense, defend, indemnify and hold WD and its affiliates and their respective officers, directors, agents and employees harmless from and against any Claims to the extent that such Claims arise out of or in connection with, result from, or are caused by: (i) the negligence, recklessness, willful misconduct or fraud of VP or its employees or authorized agents in connection with the execution and/or performance of this Agreement; (ii) any breach by VP of any of its representations, warranties, obligations, or covenants contained in this Agreement; (iii) any allegation that any of the Products being processed under the 3PL Services, or any aspect thereof, infringes upon or violates any patent, copyright, trade secret, trademark or other proprietary right of any third party; or (iv) any allegation of product liability made with respect to any Product not attributable to WD's regulatory activities and compliance, or WD's distribution, storage, handling, or shipment of Product; provided, however, that VP will have no liability or indemnification obligations to WD to the extent any such Claim is caused by the negligence, recklessness, willful misconduct or fraud of WD.

6.3 **Process for Indemnification**. The indemnification rights set forth in this Section are in addition to, and will not limit in any way, any rights to action or remedies that the parties may have in law or equity. A party that is providing indemnification (the "Indemnifying Party") will not enter into a settlement concerning any Claim without the consent of the other party (the "Indemnified Party"), which consent will not be unreasonably withheld, conditioned, or delayed. Each Indemnifying Party will be obligated to provide a defense and indemnification for covered Claims so long as the Indemnified Party notifies the Indemnifying Party of any Claims or threatened Claims within a time that does not materially prejudiced the ability to defend against those Claims. The Indemnifying Party will have sole discretion to select counsel and to the control the litigation concerning the Claims subject to indemnification. Any and all legal-related matters and other indemnified costs triggered by this Agreement will be undertaken and incurred, respectively, solely through counsel selected and managed by the Indemnifying party, in its sole discretion, who will assume sole direction and control of such legal matters. Each Indemnified Party agrees to fully cooperate in the defense of any such Claims.

6.4 **Limitation of Liabilities**. In no event will either party be liable to the other party for any special, incidental, punitive, consequential, exemplary or indirect damages arising out of this Agreement (including any damages resulting from loss of use, loss or corruption of data, loss of profits, loss of goodwill, loss of savings or loss of business), however caused and in any theory of liability, even if such party has been advised of the possibility of such damages.

**Section 7.    Risk Allocation and Insurance.**

7.1 VP bears the risk of loss or damage to the Products while in transit from VP's supplier or agent to the Facilities.

7.2 VP bears the risk of loss or damage to the Products after receipt at the Warehouse Facility until such time as the Product is delivered to the location requested by VP (other than any loss or damage attributable to the gross negligence or intentional misconduct of WD). If, WD, upon receipt of any Product, wishes to raise any complaint regarding quality or quantity

deficiencies, it shall do so in writing, within five (5) days, and shall provide VP with all relevant information in order to allow VP to exercise any rights toward any third parties.

7.3     VP bears the risk of loss due to obsolescence or expiry of the Product unless such loss is caused by the negligence or failure of WD to comply with the terms of this Agreement.

7.4     WD will maintain the following insurances coverages in force:

(a)     Workers' Compensation and Employers Liability. Statutory limits for workers' compensation and a minimum amount of $1,000,000.00 per claim for employers' liability.

(b)     Commercial General Liability. Minimum coverage of $1,000,000.00 combined single limit per occurrence limit for tangible property damage and bodily injury, and at least $1,000,000.00 coverage for any other liabilities. Coverage should include contractual, automotive, broad form property damage, personal injury, completed operations, and products coverage.

7.5     WD's general liability policy will name VP as an additional insured. Upon request, WD will provide VP with a certificate or certificates of insurance evidencing that the above-noted insurance requirements have been satisfied.

**Section 8.     Confidentiality**

8.1     **Definitions**.

(a)     Confidential Information is any proprietary information of a party, including but not limited to: technical data, trade secrets or know-how, research, product plans, products, services, customer and supplier lists and customers and suppliers, markets, software, developments, inventions, processes, formulae, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information disclosed in writing, orally or by drawings, or by observation or inspection of parts or equipment. Confidential Information does not include information that:

(1)     is known on a non-confidential basis prior to the time of disclosure as evidenced by contemporaneous written records;

(2)     has become publicly known and made generally available through no negligence or wrongful act;

(3)     has been rightfully received from a third party who is authorized to make such disclosure; or

(4)     is independently developed without access to, or use of, the Confidential Information.

(b)     Receiving Party is a party that receives Confidential Information from the other party.

(c)     Disclosing Party is a party that discloses Confidential Information to the other party.

5

8.2      **Nondisclosure**. The Receiving Party will maintain the Disclosing Party's Confidential Information in secrecy and will use best efforts to prevent its disclosure to third parties. The Receiving Party will limit the internal disclosure of the Disclosing Party's Confidential Information to only those employees (i) to whom it is necessary to disclose it to aid the Receiving Party in the performance of this Agreement and (ii) who have a written or obligation of confidentiality relating to third party confidential information. The Receiving Party will use the Disclosing Party's Confidential Information for no purposes other than to aid in the performance of this Agreement. In the event a Receiving Party is required under applicable law, rule, regulation, court or administrative order to disclose Confidential Information of the Disclosing Party, the Receiving Party will use commercially reasonable efforts to (a) give at least 10 business days prior written notice of such disclosure to the Disclosing Party; (b) limit such disclosure to the extent practicable; and (c) make such disclosure only to the extent so required. The Receiving Party's obligations will survive until such time as the Confidential Information becomes publicly known and made generally available through no action or inaction of the Receiving Party. A Receiving Party will return all Confidential Information within (10) days of request by the Disclosing Party.

8.3      **Remedies**. The Receiving Party's violation of this Section will cause immediate and irreparable harm and unascertainable damages to the Disclosing Party and the balance of equities strongly favors the grant of injunctive relief to prevent or stop its breach. The parties agree that the Disclosing Party will be entitled as a matter of right to temporary, preliminary, and permanent injunctive relief from a court of competent jurisdiction restraining any actual or threatened violation of this Agreement, without necessity of bond. The right to injunctive relief will be in addition to, and not in lieu of, all other rights and remedies of the Disclosing Party under this Agreement, by statute, at law, in equity, or otherwise.

**Section 9.      Disputes.** All disputes that cannot be amicably resolved will be governed by and construed in accordance with the laws of the state of Florida. The parties also agree that venue for any action will be the federal or state courts located in Tampa, Florida.

**Section 10.      Use of Subcontractors.** WD may perform any of its obligations under this Agreement through subcontractors, so long as such third parties, at all times, comply with applicable laws, regulations, and rules. WD acknowledges that it will be wholly liable to VP for the actions and omissions of any such subcontractors, as if WD committed such acts itself. Except as otherwise provided in this Section, neither party will assign this Agreement or its rights under this Agreement, or delegate its duties under this Agreement, without the prior written consent of the other.

**Section 11.      General**

11.1      **Integration and Amendment**. This Agreement supersedes all prior and contemporaneous agreements and understandings between the parties relating to its subject matter and, together with its Exhibits, is the complete and exclusive statement of the terms of their Agreement. It may be amended only by a writing signed by the parties.

11.2      **Effect of Exhibits**. The Exhibits are incorporated by reference in this Agreement. In the event of inconsistent provisions, the Exhibits will control this Agreement.

11.3      **Independent Contractor**. The relationship between WD and VP is solely that of independent contractors and this Agreement will not create an agency, partnership, joint venture

6

or employer/employee relationship, and nothing in this Agreement will be deemed to authorize either party to act for, represent or bind the other except as expressly provided in this Agreement.

11.4  **HIPAA.** This Agreement in no way implicates the operation or application of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and the parties are not "Business Associates" of one another as defined therein.

11.5  **Force Majeure.** No act or failure to act that is not in compliance with this Agreement will be deemed a breach, and a party's performance of this Agreement may be temporarily suspended, if such act, failure to act, or suspension is proximately caused by: (a) lightning, storms, earthquakes, landslides, flood, washouts, or other natural disasters; (b) fires, explosions, or breakage of or accidents to plant, machinery, equipment, or storage; (c) strikes, lockouts, or other labor disturbances; (d) civil disturbances, sabotage, war, terrorism, blockades, insurrections, vandalism, riots, or epidemics; (e) acts of any governmental agency (other than acts to enforce laws or regulations in effect as of the Effective Date) or military authority; (f) unavailability of utilities or transportation; or, (g) any other cause, whether enumerated above or otherwise, that is not reasonably within the control of the party claiming suspension, which by the exercise of commercially practicable efforts, such party is unable to overcome. A party claiming suspension or relief under this Section will take all practicable steps to overcome the force majeure and to limit its duration and severity, and such relief will cease upon the cessation of the force majeure. Notwithstanding the foregoing, any party's lack of finances for whatever reason (including but not limited to general economic conditions), or a party's or industry's or geographical area's general financial condition, will in no event be a force majeure.

11.6  **Severability.** If any provision of this Agreement or its application to any party or circumstance will be ruled invalid or unenforceable in any jurisdiction, that provision will be severed from this Agreement as to such jurisdiction (but, to the extent permitted by law, not elsewhere), and will not affect the remainder of this Agreement.

11.7  **Notices.** All notices, communications, or demands (other than invoices and payments) required or permitted to be given or made pursuant to this Agreement will be in writing and sent the attention of the president and general counsel, if applicable, at the addresses provided (in the case of VP, addressed using only titles without names, both to the same address) on the signature page by certified or registered mail, postage prepaid, overnight messenger service with proof of delivery, or personal delivery.

11.8  **Non-Waiver.** No waiver of any obligation or right of either party will be effective unless in writing, executed by the party against whom it is being enforced. Any such waiver will not preclude a party from exercising any other right or later exercising the same right. No delay in seeking a remedy for breach will be deemed a waiver of such remedy, nor does any waiver of any right under this Agreement imply waiver of any other right or waiver of any remedy for any subsequent breach.

11.9  **Interpretation.** The headings contained in this Agreement are inserted for convenience of reference only and will not be a part, control or affect its meaning. Ambiguities, if any, in this Agreement will not be construed against any party which may have, or may be deemed or claimed to have, authored the provision claimed to be ambiguous.

11.10  **No Third-Party Beneficiary.** This Agreement is entered into for the exclusive benefit of the parties. Neither party intends that any other entity be a third-party beneficiary of this

Agreement, and this Agreement will not be deemed to be for the benefit of any third parties regardless of the parties' intentions.

11.11 **Counterparts; Facsimile and Digital Image Signatures**. This Agreement may be executed in counterparts, which together will be deemed a single instrument. This Agreement may be executed through the exchange of signature pages containing faxed or digital image signatures. Faxed or digital image signatures will have the same effect as original signatures.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed as of the Effective Date.

WOODFIELD DISTRIBUTION, LLC

By:

Print Name: Adam Kunsdorf

Title: President

Dated: 8/10/17

**VIRTUS PHARMACEUTICALS, LLC (Delaware)**

By:

Print Name: Tina Guilder

Title: CEO

Dated: 08/28/2017

**VIRTUS PHARMACEUTICALS, OPCO II, LLC**

By:

Print Name: Ashleigh Preiss

Title:

Dated: 8/29/2017

8

## EXHIBIT A

### Products – Virtus Pharmaceutical, LLC (Delaware)

| Product | NDC# |
|---|---|
| CEPHALEXIN 250 mg | 69543010150 |
| CEPHALEXIN 500 mg | 69543010250 |
| DESLORATADINE 5 mg | 69543010710 |
| DESLORATADINE 5 mg | 69543010730 |
| DESLORATADINE 5 mg | 69543010750 |
| ACARBOSE 25 mg | 69543012010 |
| ACARBOSE 25 mg | 69543012011 |
| ACARBOSE 50 mg | 69543012110 |
| ACARBOSE 50 mg | 69543012111 |
| ACARBOSE 100 mg | 69543012210 |
| ACARBOSE 100 mg | 69543012211 |
| GLIMEPIRIDE 1 mg 100ct | 69543012310 |
| GLIMEPIRIDE 1 mg 500ct | 69543012350 |
| GLIMEPIRIDE 2 mg 100ct | 69543012410 |
| GLIMEPIRIDE 2 mg 500ct | 69543012450 |
| GLIMEPIRIDE 4 mg 100ct | 69543012510 |
| GLIMEPIRIDE 4 mg 500ct | 69543012550 |
| ALENDRONATE SODIUM 35 mg | 69543013004 |
| ALENDRONATE SODIUM 35 mg | 69543013012 |
| ALENDRONATE SODIUM 70 mg | 69543013104 |
| ALENDRONATE SODIUM 70 mg | 69543013112 |
| ALENDRONATE SODIUM 70 mg | 69543013120 |
| METHOCARBAMOL 500 mg | 69543013410 |
| METHOCARBAMOL 500 mg | 69543013450 |
| METHOCARBAMOL 750 mg | 69543013510 |
| METHOCARBAMOL 750 mg | 69543013550 |
| TRAMADOL HCL | 69543013610 |
| TRAMADOL HCL | 69543013611 |
| TRAMADOL HCL | 69543013650 |
| LOSARTAN POTASSIUM 25 MG | 69543014011 |
| LOSARTAN POTASSIUM 25 MG | 69543014090 |
| LOSARTAN POTASSIUM 50 mg | 69543014111 |
| LOSARTAN POTASSIUM 50 mg | 69543014130 |
| LOSARTAN POTASSIUM 50 mg | 69543014190 |
| LOSARTAN POTASSIUM 100 mg | 69543014211 |
| LOSARTAN POTASSIUM 100 mg | 69543014230 |
| LOSARTAN POTASSIUM 100 mg | 69543014290 |
| DAPSONE 25MG 30CT | 69543015030 |
| DAPSONE 100MG 30CT | 69543015130 |
| MAGNESIUM OXIDE 400 mg | 69543021712 |
| VP-ZEL | 69543022160 |
| VP-GSTN | 69543022260 |

9

**Products – Virtus Pharmaceutical, LLC (Delaware)**

| Product | NDC# |
|---|---|
| VP-PNV-DHA | 69543022330 |
| VP-PRECIP | 69543023212 |
| ERGOCALCIFEROL | 69543023460 |
| VP-HEME OB | 69543023790 |
| VP-HEME ONE | 69543024030 |
| VIRT-PN | 69543024190 |
| VIRT-PN PLUS | 69543024330 |
| VIRTUSSIN AC | 69543025204 |
| VIRTUSSIN AC | 69543025216 |
| VIRTUSSIN DAC | 69543025316 |
| PREPLUS 100ct | 69543025810 |
| PREPLUS 500ct | 69543025850 |
| PRETAB | 69543025910 |
| VIRT-CAPS | 69543026010 |
| VIRT NATE | 69543026410 |
| PNV 29-1 | 69543026790 |
| VIRT-PHOS 250 NEUTRAL | 69543026810 |
| GUAIFENESIN-CODEINE ORAL SOLUTION | 69543027616 |
| VIRT-PN DHA | 69543034030 |
| VP Vite RX | 69543035610 |
| VirtNate DHA | 69543037030 |
| PROMETRIUM 100MG | 69543037210 |
| PROMETRIUM 200MG | 69543037310 |
| PROGESTERONE 100MG | 69543037410 |
| PROGESTERONE 200MG | 69543037510 |
| Tranexamic Acid 10x ampule | 69543037623 |
| POTASSIUM CHLORIDE 20 mEq 30ct | 69543037930 |
| POTASSIUM CHLORIDE 20 mEq 100ct | 69543037910 |
| Tranexamic Acid 1 vial | 69543037613 |
| Tranexamic Acid 10x vials | 69543037614 |
| OLANZAPINE 2.5MG 30 | 69543038030 |
| OLANZAPINE 2.5MG 90 | 69543038090 |
| OLANZAPINE 5MG 30 | 69543038130 |
| OLANZAPINE 5MG 90 | 69543038190 |
| OLANZAPINE 7.5MG 30 | 69543038230 |
| OLANZAPINE 7.5MG 90 | 69543038290 |
| OLANZAPINE 10MG 30 | 69543038330 |
| OLANZAPINE 10MG 90 | 69543038390 |
| OLANZAPINE 15MG 30 | 69543038430 |
| OLANZAPINE 15MG 90 | 69543038490 |
| OLANZAPINE 20MG 30 | 69543038530 |
| OLANZAPINE 20MG 90 | 69543038590 |

## Products – Virtus Pharmaceuticals OpCO II, LLC (Delaware)

| Product | NDC# |
| --- | --- |
| VP-GGR-B6 | 76439023360 |
| POTASSIUM CITRATE-CITRIC ACID | 76439026110 |
| CHLORDIAZEPOXIDE-CLIDINIUM | 76439030210 |
| HYOSCYAMINE SULFATE ODT | 76439030710 |
| HYOSCYAMINE SULFATE TAB | 76439030810 |
| HYOSCYAMINE SULFATE SL | 76439030910 |
| VIRT-C DHA | 76439033130 |
| VirtGard RX | 76439035310 |
| L-METHYLFOLATE CALCIUM 15 | 76439035890 |
| L-METHYLFOLATE CALCIUM 7.5 30ct | 76439035930 |
| L-METHYLFOLATE CALCIUM 7.5 90ct | 76439035990 |
| L-METHYL-MC | 76439036090 |
| L-METHYL-MC NAC | 76439036190 |
| L-METHYL-B6-B12 500ct | 76439036250 |
| L-METHYL-B6-B12 90ct | 76439036290 |
| VIRT-VITE PLUS | 76439036390 |
| VIRT-VITE | 76439036490 |
| VIRT-VITE FORTE | 76439036590 |

**EXHIBIT B**

**3PL Services**

| Services Provided | Pricing Schedule |
|---|---|
| Quarantine Receiving and Release, Re-Palletization, Intra-Warehouse Moves, Fulfillment and Distribution | Transaction Rate: $5.00 (Per Order Received) Unit Rate: $0.1325 |
| Transportation Charges: Small Parcel / LTL<br><br>Truckload | Unit Rate: $0.25 Through December 2017 Unit Rate: $0.265 Starting January 2018 Logistics Providers Contract Rate Plus 15% |
| Storage Charges (One Month Minimum) | Monthly Rate: $15.00 Per Pallet (Ambient) Monthly Rate: $20.00 Per Pallet (Cage) Monthly Rate: $25.00 Per Pallet (Vault) Monthly Rate: $45.00 Per Pallet (Refrigerated) |
| Warehouse & Shipping Supplies | Supplier Contract Rate Plus 15% |
| Account Management & Reporting Including ePortal (Real Time Access to Inventory, Order and Shipment Activities) | Monthly Rate: $500.00 |
| Annual Physical Inventory Audit (If Required) | Annual Rate: $500.00 |
| Assessorial Labor and Overtime | Labor Rate: $45.00 Per Hour/Technician |
| Information Technology Services | To Be Determined Based on Work Project |

**Warehouse Facility Locations:**

**951 Clint Moore Road, Suite A, Boca Raton, FL 33487**

**1113 Gillingham Lane, Suite A, Sugar Land, TX 77478**

12

## EXHIBIT C

### Return Goods Services

| Services Provided | Pricing Schedule |
|---|---|
| Receiving Per/Package Charges | Transaction Rate: $5.00 |
| Processing Charges:<br>    Non-Controlled Full Items:<br>    Non-Controlled Partial Items:<br>    Controlled Full Items:<br>    Controlled Partial Items:<br>    Full Sealed Cases: | Item Rate: $0.30<br>Item Rate: $0.35<br>Item Rate: $0.40<br>Item Rate: $0.45<br>Item Rate: $1.50 |
| Return Authorization Forms (Mail)<br>DEA Form 222<br>DEA Form 41:<br>    Full Items:<br>    Partial Items: | Transaction Rate: $1.50 Plus Postage<br>Transaction Rate: $3.50 Plus Postage<br><br>Item Rate: $0.40<br>Item Rate: $0.45 |
| Transportation Charges (To Facility) | Logistics Providers Contract Cost Plus 15% |
| Reports and Reconciliation Charges | Transaction Rate: Inclusive |

### Warehouse Facility Location:

**951 Clint Moore Road, Suite A, Boca Raton, FL 33487**

## EXHIBIT D

### Disposed Goods Processing

| Services Provided | Pricing Schedule |
|---|---|
| Disposal Goods Orders | Transaction Rate: $5.00 Per Order |
| Disposal Goods Processing | Transaction Rate: $0.10 Per Unit |
| Destruction of Non-Controlled Substances | Transaction Rate: $0.21 Per Pound |
| Destruction of Controlled Substances | Transaction Rate: $0.60 Per Pound |
| Transportation | Transaction Rate: $40.00 Per Pallet |
| Witness / Materials | Transaction Rate: $500.00 |
| Fuel Surcharge / Recovery Fee | 14% of Destruction Related Charges |
| Return Authorization Forms (Mail) DEA Form 222 | Transaction Rate: $1.50 Plus Postage Transaction Rate: $4.00 Plus Postage |

### Warehouse Facility Locations:

**951 Clint Moore Road, Suite A, Boca Raton, FL 33487**

**1113 Gillingham Lane, Suite A, Sugar Land, TX 77478**

# EXHIBIT B

| | |
|---|---|
| **From:** | Brecht, Ian D |
| **To:** | David S. Schumacher |
| **Subject:** | Re: Virtus Pharmaceuticals |
| **Attachments:** | image001.png |
| | image002.jpg |
| | image003.jpg |

John E. Beerbower

Drug Enforcement Administration

Office of Chief Counsel

Diversion and Regulatory Litigation Section

(office) (571) 362-7905

(email) john.e.beerbower@usdoj.gov

Mailing Address: 8701 Morrissette Drive, Springfield, VA 22152

Sent from my iPhone

> On Aug 12, 2021, at 10:41 AM, David S. Schumacher <dschumacher@health-law.com> wrote:

Hi Ian – it's David Schumacher, counsel for Virtus Pharmaceuticals. I have an urgent issue that I'd like to discuss with you. Are you free?

Thanks,

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**

DIRECT: +1 617.532.2704    MAIN: +1 617.532.2700    MOBILE: +1 617.688.2398

dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Wednesday, July 7, 2021 4:09 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**EXTERNAL EMAIL MESSAGE**

Excellent! Thanks again!

Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Wednesday, July 7, 2021 1:58 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Actually I just received it. It is attached.

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Wednesday, July 7, 2021 2:13 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**EXTERNAL EMAIL MESSAGE**

Sounds good. Thanks, David.

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Wednesday, July 7, 2021 12:01 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

I have sent it to them for their signature. Let me follow up. I should be able to get this to you this week.

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com  |  www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Wednesday, July 7, 2021 12:53 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**EXTERNAL EMAIL MESSAGE**

Hi David,

I wanted to follow up on the Virtus business records affidavit and see if you had a timeline?

Thanks,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Monday, June 28, 2021 4:33 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

No problem – will get one prepared.

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com  |  www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Monday, June 28, 2021 5:02 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**EXTERNAL EMAIL MESSAGE**

David,

As a follow-up to our phone conversation, please provide a business records affidavit for the previous Virtus documents produced regarding Woodfield Distribution.

Thank you again,
Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited. If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Monday, May 31, 2021 2:26 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Ian,

I checked with Virtus, and here are the answers I received to your questions:

Does Virtus have records for the quantity and type of controlled substances previous and currently stored at Woodfield during a specific timeframe, or just dates that orders are received and fulfilled?

Virtus uses an inventory management system that can show what is on inventory right now to date at Woodfield. However, we wouldn't be able to go back and say we had 100 units on 4/15/16. Virtus uses SAP for our Good Receipt processing and inventory system where we can pull reports for a specific product and show approx. date, units and product description. Also, if there are specific products and purchase orders from the controlled vendor we can go back and pull physical documentation for specific product lots for shipping paperwork.

Also, can you please clarify what the column "PGI Date" represents? Is this the date controlled substances were shipped, received, or other?

PGI Date is the date a product was shipped outbound to the customer from Woodfield. This is also the date the customer receives an invoice.

I hope this helps. Let me know if you need additional information.

David


**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Monday, May 24, 2021 4:13 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>; John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals


**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hi David and John,

I hope this message finds you well. First off, thank you for your previous responses and documents. I am following up with another question posed by our counsel concerning the previous Administrative Subpoena. Does Virtus have records for the quantity and type of controlled substances previous and currently stored at Woodfield during a specific timeframe, or just dates that orders are received and fulfilled? Also, can you please clarify what the column "PGI Date" represents? Is this the date controlled substances were shipped, received, or other?

Thank you in advance for your clarification. Please feel free to call me with any questions.

Regards,

Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742
Cell: 281-639-0859

---

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Wednesday, April 21, 2021 9:55 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>; John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

Ian, I think John is out for the rest of day, so he probably won't make the production until tomorrow.

**David S. Schumacher**

---

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

---

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

---

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Wednesday, April 21, 2021 10:54 AM
**To:** John A. Ferrigno <jferrigno@HEALTH-LAW.COM>; David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hi John,

I sent out a link to the USAfx folder this morning. Let me know if you have not received it.

Thanks,
Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

---

**From:** John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Sent:** Tuesday, April 20, 2021 8:46 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>; David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

Hello Ian, on the USAFX site I typically will see a folder with the case name when I've been invited to it. I don't see the folder for this case. Can you please confirm that I've been invited to the folder. Thank you.

**John A. Ferrigno**
LITIGATION SUPPORT MANAGER

---

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 310.551.8162     MAIN: 310.551.8111     FAX: 310.551.8181
jferrigno@health-law.com | www.health-law.com

---

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

---

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Tuesday, April 20, 2021 9:19 AM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Cc:** John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

John, thank you in advance for uploading the documents into USAfx.

David – can you please give me a call when you're available? My work cell is 281-639-0859.

Thanks,
Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

&lt;image001.png&gt;

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Tuesday, April 20, 2021 10:40 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Cc:** John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

Ian, if you could, please inform the AUSAs and trial attorneys that I made this request. In my experience, it is typical for defense counsel to speak with the AUSA on the case.

Separately, I am including John Ferrigno on this message. John is our litigation technology specialist. He has made a number of productions via USAfx, and he will be the person doing it here. Thanks.

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Tuesday, April 20, 2021 10:51 AM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Morning David,

Excellent! USAfx is preferred. Do you want me to set up a USAfx folder?

The information requested from Virtus is tied to multiple cases each with different AUSAs and DOJ attorneys from various districts so I would not be able to share one single contact. Additionally, I have not received permission from our counsel to share their contact information at this time but will direct them to contact you for any questions concerning Virtus.

Thank you,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Tuesday, April 20, 2021 7:47 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Hi Ian,

I have the spreadsheets that we discussed containing Virtus' order history with Woodfield, and additional information. How would you like to receive these? We can produce on Sharefile or USAfx. Also, is there an AUSA assigned to the case? If so, could

you provide contact information?

Thanks,

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Monday, April 12, 2021 12:36 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

You can call my cell 281-639-0859.

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Monday, April 12, 2021 11:32 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Yes. What's the best number to call?

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and

may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

---

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Monday, April 12, 2021 12:31 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hi David,

Yes, I'm available tomorrow morning to discuss the subpoena. Are you available at 10:00 AM (central)?

Thanks,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

---

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Monday, April 12, 2021 11:29 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Hi Ian. Do you have a moment tomorrow to discuss the Virtus subpoena? If so, let me know what times work.

Thanks very much.

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Thursday, April 1, 2021 4:10 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

David,

Records should be sufficient at this time. Please include a certification of records with Virtus' response. Again, I'm happy to answer any questions that may arise while compiling the requested information.

Thank you,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Thursday, April 1, 2021 3:08 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

OK. Do you need testimony, or will the records be sufficient?

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com  |  www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Thursday, April 1, 2021 2:54 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

David,

Thank you for your patience and impeccable timing. Please see the attached subpoena. Let me know if you or your client have any questions.

Respectfully,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Thursday, April 1, 2021 1:43 PM

**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

No rush on our end, Ian. You know where to find me.

David

### David S. Schumacher

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Thursday, April 1, 2021 2:36 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hello Mr. Schumacher,

I apologize for the delayed response. I received your email correspondence and will send you the aforementioned subpoena when it is available to me.

Thank you,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Thursday, April 1, 2021 9:03 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Investigator Brecht,

Just confirming that you received this email and that you are aware that I represent Virtus Pharmaceuticals, so they should not be contacted without going through me. Thanks very much.

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704   MAIN: 617.532.2700   MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** David S. Schumacher
**Sent:** Monday, March 29, 2021 12:34 PM
**To:** Ian.D.Brecht@usdoj.gov
**Subject:** Virtus Pharmaceuticals

Investigator Brecht,

It was nice to speak with you just now. As we discussed, I am authorized to accept service of the subpoena on behalf of Virtus Pharmaceuticals. Feel free to send it to me vial email.

Thanks,

David

**David S. Schumacher**

<image002.jpg>

**HOOPER, LUNDY & BOOKMAN, P.C.**
470 Atlantic Avenue, 1201
Boston, MA 02210
DIRECT: 617.532.2704   MAIN: 617.532.2700   MOBILE: 617.688.2398

dschumacher@health-law.com | www.health-law.com

<image003.jpg>

BOSTON | DENVER | LOS ANGELES | SAN DIEGO | SAN FRANCISCO | WASHINGTON, DC

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.