

**U.S. Department of Justice**
Drug Enforcement Administration

*Office of the Administrator*                    *Springfield, VA 22152*

08/04/2021

**IN THE MATTER OF**

Woodfield Distribution, LLC
1113 Gillingham Lane, Suite A
Sugar Land, Texas 77478

Woodfield Pharmaceutical, LLC
10863 Rockley Road
Houston, Texas 77099

DEA Certificates of Registration:

███████████████████████████

### ORDER TO SHOW CAUSE AND
### IMMEDIATE SUSPENSION OF REGISTRATION

**PURSUANT** to Sections 303 and 304 of the Controlled Substances Act, Title 21,
United States Code, Sections 823 and 824,

**NOTICE** is hereby given to inform Woodfield Distribution, LLC (Woodfield Distribution)
and Woodfield Pharmaceutical, LLC (Woodfield Pharma) (collectively, Woodfield) of the
immediate suspension of Drug Enforcement Administration (DEA) Certificates of Registration
(COR) Nos. ██████████████████████████ pursuant to 21 U.S.C § 824(d),
because Woodfield's continued registration constitutes "an imminent danger to the public health
or safety." Notice is also given to afford Woodfield an opportunity to show cause before DEA at
the DEA Hearing Facility located at 1550 Crystal Drive, Suite 901, Arlington, Virginia 22202,
on October 5, 2021, or on such a subsequent date designated by the Administrative Law Judge
(if Woodfield requests such a hearing), as to why DEA should not revoke Woodfield's
registrations pursuant to 21 U.S.C. § 824(a)(4), deny any pending applications for renewal or
modification of such registrations, and deny any applications for additional DEA registrations,
because Woodfield's continued registration is inconsistent with the public interest, as that term is
defined in 21 U.S.C. § 823(a), (b), (d), & (e).

Virtus_DEA000001

As detailed below, this order states DEA's basis for this Order to Show Cause and Immediate Suspension of Registration, including a ***non-exhaustive summary*** of facts and law at issue, as well as citations to laws and regulations that Woodfield has violated (*see* 21 C.F.R. §§ 1301.36(e) and 1301.37(c), which DEA construes *in pari materia*). In order to preserve Woodfield's rights in this proceeding, Woodfield may appear in these revocation proceedings by filing a notice of appearance or request for hearing in the manner prescribed by regulations within 30 days from the receipt of this Order.

1. Woodfield Distribution and Woodfield Pharma are related entities and share common ownership. Woodfield Distribution holds itself out as providing "integrated third-party logistics pharmaceutical services and value-added solutions." Woodfield Distribution operates as an importer and distributor of controlled substances. It imports controlled substances from foreign manufacturers or obtains them from domestic manufacturers and then distributes them to customers across the United States. Woodfield Pharma is a "pharmaceutical contract manufacturer" specializing in oral solutions, liquid solutions, suspensions, and semi-solids, including controlled substances.

## WOODFIELD DISTRIBUTION, LLC

2. Woodfield Distribution is currently registered with DEA as a distributor in Schedules II through V under DEA Certificate of Registration No. ███████ at 1113 Gillingham Lane, Suite A, Sugar Land, Texas 77478. This Certificate of Registration expires by its own terms on May 31, 2022.

3. Woodfield Distribution is also registered with DEA as an importer in Schedules III through V under DEA Certificate of Registration No. ███████ at 1113 Gillingham Lane, Suite A, Sugar Land, Texas 77478. This Certificate of Registration expires by its own terms on May 31, 2022.

4. Woodfield Distribution is licensed by the Texas Department of State Health Services as a prescription drug distributor under license number 1001707. Woodfield Distribution's state license expires by its own terms on March 30, 2023.

### FAILURE TO MAINTAIN EFFECTIVE CONTROLS AGAINST DIVERSION

5. Controlled substance distributors have an affirmative obligation to "provide effective controls and procedures to guard against theft and diversion of controlled substances." 21 C.F.R. § 1301.71(a). Failure to maintain such effective controls can render a distributor's continued registration "inconsistent with the public interest" as defined in the Controlled Substances Act (CSA). *See* 21 U.S.C. § 823(b)(1) (in order for its registration to be in the public interest, a drug distributor is required to, *inter alia*, "maintain[] effective control[s] against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels");[1]

---

[1] Woodfield is registered with the DEA as a distributor in Schedules II through V. The "public interest" considerations for distributors in Schedules I and II are set forth at 21 U.S.C. § 823(b). The "public interest"

Virtus_DEA000002

see also *Masters Pharmaceuticals, Inc.*, 80 Fed. Reg. 55,418, 55,473 (2015), *pet. for rev. denied Masters Pharmaceuticals, Inc. v. DEA*, 861 F.3d 206 (D.C. Cir. 2017); *Southwood Pharmaceuticals, Inc.*, 72 Fed. Reg. 36,487, 36,498 (2007).

6. The regulations set forth "security requirements" to be used "[i]n order to determine whether a registrant has provided effective controls against diversion." 21 C.F.R. § 1301.71(a). These security requirements include, but are not limited to:

   a. physical security requirements, *id.* § 1301.72-73;

   b. requirement to detect and report "suspicious orders of controlled substances," *id.* § 1301.74(b); and

   c. requirement to report "any theft or significant loss of any controlled substances," *id.* § 1301.74(c).

7. As discussed below, DEA's investigation, including three on-site visits in 2020, revealed that Woodfield Distribution manifestly failed to comply with its obligation to maintain effective controls against the diversion of controlled substances. Woodfield Distribution's violations include the persistent and comprehensive failure to maintain complete and accurate records, report thefts or significant losses when appropriate, detect and report suspicious orders, and comply with the physical security requirements imposed on registrants. As detailed below, many of these violations continued through as recently as at least May 2021.

**Violations Regarding Missing Controlled Substances**

Failure to Maintain Accurate Continuing Records

8. "Recordkeeping is one of the CSA's principal tools for preventing the diversion of controlled substances." *Wayne Pharmacy*, 85 Fed. Reg. 63,579, 63,582 (2020). Recordkeeping is one of the central features of the CSA's regulatory regime because "a registrant's accurate and diligent adherence to this obligation is absolutely essential to protect against the diversion of controlled substances." *Superior Pharmacy I & Superior Pharmacy II*, 81 Fed. Reg. 31,310, 31,337 (2016).

9. Where a registrant "is abjectly unable to account for 'extraordinary quantities' of controlled substances, the Agency has held that 'it has committed acts which render its registration inconsistent with the public interest.'" *Top RX Pharmacy*, 78 Fed. Reg. 26,069, 26,084 (2013) (*quoting Ideal Pharmacy Care, Inc. d/b/a Esplande Pharmacy*, 76 Fed. Reg. 51,415, 51,416 (2011)).

---

considerations for distributors in Schedules III through V are set forth at 21 U.S.C. § 823(e). Insofar as these statutory provisions are materially identical, this Order cites Section 823(b) for the public interest considerations for controlled substance distributors. However, these requirements apply equally to Woodfield's authorization to distribute controlled substances in Schedules III through V.

Virtus_DEA000003

10. As a distributor, Woodfield Distribution must, *inter alia*, "maintain, on a current basis, a complete and accurate record of each substance manufactured, imported, received, sold, delivered, exported, or otherwise disposed of by him/her, and each inner liner, sealed inner liner, and unused and returned mail-back package[.]" 21 C.F.R. § 1304.21(a); *see also* 21 C.F.R. § 1304.22(b) (specific recordkeeping requirements for distributors).

11. In March 2020, DEA investigators conducted an audit of Woodfield Distribution's controlled substances records by taking an inventory of the controlled substances present at Woodfield Distribution's registered location and comparing that inventory to the records maintained and provided by Woodfield Distribution. DEA's audit found that Woodfield Distribution did not account for significant quantities of controlled substances. This violated 21 C.F.R. §§ 1304.21(a) and 1304.22(b). *See Bill Lloyd Drug*, 64 Fed. Reg. 1,823, 1,824 (1999) ("The shortages and overages revealed by the accountability audit show that Respondent does not keep complete and accurate records of its controlled substance handling as required by 21 U.S.C. 827 and 21 CFR 1304.21."). Specifically, Woodfield Distribution was unable to account for:

   a. 67,197,000 dosage units of tramadol 50 mg, a Schedule IV controlled substance;

   b. 5,108,000 dosage units of phendimetrazine 35mg, a Schedule III controlled substance;

   c. 378,000 dosage units of phendimetrazine 105mg;

   d. 285,600 dosage units of levorphanol tartrate 2mg, a Schedule II controlled substance;

   e. 144,000 dosage units of phenobarbital 97.2mg, a Schedule IV controlled substance; and

   f. 88,496 bottles of guaifenesin with codeine 473ml, a Schedule V controlled substance.

12. Woodfield Distribution's failure to account for tens of millions of dosage units of controlled substances not only violated its obligation to maintain accurate records, but also constituted a significant failure to comply with Woodfield Distribution's obligation to maintain effective controls against the diversion of controlled substances into illicit channels. *See, e.g., Superior Pharmacy*, 81 Fed. Reg. at 31,337.

Failure to Report Theft or Significant Loss of Controlled Substances

13. Registrants "must notify the [DEA] . . . , in writing, of any theft or significant loss of any controlled substances within one business day of discovery of the theft or loss. . . . The registrant must also complete, and submit to the Field Division Office in his or her area, DEA Form 106 regarding the theft or loss." 21 C.F.R. § 1301.74(c).

4

Virtus_DEA000004

14. "Thefts and significant losses must be reported whether or not the controlled substances are subsequently recovered or the responsible parties are identified and action taken against them." *Id.*

15. On or about January 13, 2019, a burglary occurred at Woodfield Distribution's registered location. At least 217,200 dosage units of alprazolam, a Schedule IV controlled substance, were stolen. Woodfield Distribution never filed a theft or loss report with DEA, in violation of 21 C.F.R. § 1307.74(c), despite being informed subsequently by DEA of Woodfield Distribution's responsibility to do so.

16. DEA has identified at least 45 shipments that Woodfield Distribution distributed between January 1, 2019, and March 9, 2020, in which shipments of controlled substances, *viz.*, tramadol, and guaifenesin with codeine, were unaccounted for or missing.[2] This constituted a significant loss of controlled substances, as defined under 21 C.F.R § 1301.74(c). However, for that time period, Woodfield Distribution filed only one theft or loss report. Woodfield Distribution therefore failed to report at least 44 shipments with missing controlled substances totaling hundreds of thousands of dosage units.

17. During an inspection of Woodfield Distribution's facilities on March 9, 2020, DEA investigators discussed with Woodfield Distribution its obligation to file theft or loss reports under the regulations. Subsequently, between March 10, 2020, and March 18, 2021, Woodfield Distribution filed 26 theft or loss reports. However, for that same period, DEA identified at least 58 shipments where controlled substances, *viz.*, tramadol, levorphanol, and guaifenesin with codeine, distributed by Woodfield Distribution were unaccounted for or missing. Woodfield Distribution therefore failed to report at least 32 shipments missing tens of thousands of dosage units of controlled substances in total.

18. By failing to report the theft and/or loss of hundreds of thousands of dosage units of controlled substances in an approximately two-year period, Woodfield Distribution violated its reporting obligations under 21 C.F.R. § 1307.74(c). It also failed to comply with its obligation to maintain effective controls against the diversion of controlled substances into illicit channels. *Cf. Wayne Pharmacy*, 85 Fed. Reg. at 63,582 ("Registrant's failure to notify DEA of the significant loss of controlled substances within one business day of discovering the loss was a violation of 21 CFR 1301.76(b) and a violation of 21 CFR 1301.71, which requires all registrants to provide 'effective controls and procedures to guard against theft and diversion of controlled substances' as set forth in 1301.72-76.").

---

[2] In a distribution transaction, the distributor "is responsible for reporting all in-transit losses of controlled substances by their agent or the common or contract carrier selected [by them], within one business day of discovery of such theft or loss." 21 C.F.R. § 1301.74(c).

5

Virtus_DEA000005

**Failure to Operate an Effective System to Identify and Report "Suspicious Orders"**

19. Registrants "shall design and operate a system to identify suspicious orders for the registrant" and "upon discovering a suspicious order or series of orders, notify" the DEA. 21 U.S.C. § 832(a); *see also* 21 C.F.R. § 1301.74(b) (registrants "shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Field Division Office of the Administration in his area of suspicious orders when discovered by the registrant.").

20. "Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 21 C.F.R. § 1301.74(b); *see also* 21 U.S.C. § 802(57) (the term "suspicious order" may include, but is not limited to "(A) an order of a controlled substance of unusual size; (B) an order of a controlled substance deviating substantially from a normal pattern; and (C) orders of controlled substances of unusual frequency").

21. The enumerated criteria are disjunctive and not exhaustive and "other indicia may also raise suspicions about an order for controlled substances." *Masters Pharmaceuticals, Inc. v. DEA*, 861 F.3d 206, 221 (D.C. Cir. 2017) (citing *Southwood Pharmaceuticals*, 72 Fed. Reg. 36,487, 36,501-02 (2007)). For example, the customer's "business model, dispensing patterns, or other characteristics might make an order suspicious, despite the particular order not being of unusual size, pattern or frequency." *Masters Pharmaceuticals*, 80 Fed. Reg. 55,418, 55,474 (2015).

22. The regulation imposes an affirmative obligation on a registrant to monitor for, and detect, any information that "raises a substantial question as to the legitimacy of a customer's [business] practices." *Masters Pharmaceuticals*, 80 Fed. Reg. at 55,478. The regulation is "violated where the registrant has obtained information that an order is suspicious but then chooses to ignore that information and fails to report the order." *Id.*

23. In addition, DEA has recognized that a registrant must properly document its suspicious order monitoring procedures, any indicia of suspiciousness that it is aware of, and any steps taken to address or resolve indicia of suspiciousness. "Even if the Agency's regulations do not require a distributor to document the reason provided by a customer to justify a suspicious order [under 21 C.F.R. § 1301.74(b)], documenting that reason is still an essential part of maintaining effective controls against diversion because subsequent events may provide information which show that the reason was false." *Masters Pharmaceuticals*, 80 Fed. Reg. at 55,428 n. 21.

24. Similarly, "where there is an absence of documentation that Respondent performed the respective act, that absence is substantial evidence that Respondent did not perform the act." *Id.* at 55,428. Failing to document due diligence investigations is thus a violation of the general obligation to maintain effective controls against diversion.

6

25. Between at least April 7, 2018, and the present, Woodfield Distribution has not reported any suspicious orders to DEA.

26. On April 7, 2020, Woodfield Distribution provided DEA with a copy of its Suspicious Order Monitoring System Standard Operating Procedure (SOP) effective February 17, 2020. In the SOP, Woodfield Distribution recognized its obligation to "maintain an effective due diligence program to guard against the diversion" of controlled substances, "to detect suspicious orders," and to "ensure compliance with both regulatory and contractual requirements."

27. The SOP provided, in relevant part, that orders for controlled substances "must be authenticated through W[oodfield ]D[istribution]'s SOMS in Datex and flagged if the order does not comply."[3] Specifically, the SOP required Woodfield Distribution to monitor for orders that were: (1) "[i]dentical to another order placed within a seven (7) day time period;" (2) "[i]n excess of two (2) times the monthly average per Class or Customer average;" or (3) that represent a "drastic shift in order patterns and/or ordering time periods." According to the SOP, orders that meet these criteria will "trigger an investigation" and a report to DEA "within one (1) business day of discovery."[4]

28. On or about May 18, 2021, DEA served an administrative subpoena on Woodfield Distribution requesting "any and all documents pertaining to the design and operation of the controlled substance suspicious orders monitoring and reporting for Woodfield Distribution."

29. The administrative subpoena included a request for records regarding "any systems designed and utilized by [Woodfield Distribution] to identify and report suspicious orders of controlled substance" and any records regarding any "due diligence or internal investigations conducted on potentially suspicious orders made for controlled substances, including—but not limited to—documentation thereof and/or communications concerning the procedures utilized during and the results of any such investigations."

30. On or about May 20, 2021, Woodfield Distribution's president and owner Adam Runsdorf responded, "[a]t this time, there are no records of Suspicious Order Reports filed by Woodfield Distribution, LLC referencing the company's Sugar Land, TX facility location for controlled substances." The response also offered to provide additional information regarding the Datex system.

---

[3] Datex Corporation is a third-party software company that provides warehouse management software to its customers, including Woodfield Distribution.

[4] Woodfield Distribution also provided DEA investigators with an earlier version of the SOP, effective August 10, 2018, which was materially similar to the February 2020 SOP. Woodfield later provided a revised SOP, dated March 25, 2020. This version was materially identical to the February 2020 SOP.

Virtus_DEA000007

31. On May 26, 2021, Woodfield Distribution's president again confirmed to DEA that "[a]t this time, there have not been any Suspicious Orders identified nor reporting filed by Woodfield Distribution, LLC referencing the company's Sugar Land, TX facility location for controlled substances." The May 26, 2021 response also represented that the Datex system had the "ability to customize and develop certain audit trail functionality and reporting for Suspicious Order Monitoring."[5]

32. Woodfield Distribution never produced any documents or records regarding any due diligence or investigations conducted with respect to any customers or orders of controlled substances. Indeed, Woodfield Distribution has continually maintained that its system has not flagged any potentially suspicious orders for review.

33. On or about May 25, 2021, DEA served an administrative subpoena on Datex, seeking information regarding Datex products and/or licenses used by Woodfield Distribution and any Datex products related to suspicious order monitoring, including any implementation of Datex products in connection with Woodfield Distribution's suspicious order monitoring system.

34. Based on a review of the materials produced by Datex, and conversations between Datex personnel and DEA investigators, DEA determined that Datex does not provide suspicious order monitoring products. DEA also determined that Woodfield Distribution has not customized the Datex software in a manner that would allow Woodfield Distribution to undertake the type of review outlined in the various SOPs.

35. In addition, DEA conducted an analysis of certain orders for controlled substances distributed by Woodfield Distribution between January 18, 2019, and April 13, 2021. DEA reviewed information regarding approximately 13,150 orders of controlled substances distributed by Woodfield Distribution during that period.

36. DEA's analysis replicated the enumerated indicia of suspiciousness set forth in Woodfield Distribution's SOP.[6] Specifically, DEA's analysis identified: (1) orders that were identical to another order for the same product distributed to the same customer within the prior seven days, and (2) orders that exceeded two times the prior month's average of orders for that product by that customer.

---

[5] The May 26, 2021 response also included a revised SOP, dated May 25, 2021. The May 25, 2021 SOP provides simply that Woodfield will monitor for suspicious orders, to include "order of unusual size, orders deviating substantially from a normal pattern and orders of unusual frequency" and that "[o]rders shall be restricted if there is a shift in order patterns and/or ordering time periods." As an "[e]xample," the May 25, 2021 SOP indicated that Woodfield Distribution will look for orders "[i]n excess of three (3) times above historical monthly average per volume and frequency of individual controlled drug product and/or customer or client."

[6] In conducting this analysis, DEA does not concede that the system described in the SOP would have been compliant with 21 C.F.R. § 1301.74(b), if operated. Nor does DEA concede that the criteria set forth in the SOP are indicia of suspiciousness. Instead, the purpose of DEA's analysis was to determine whether Woodfield Distribution's failure to flag any orders was consistent with its own purported protocols. *Cf. Masters Pharmaceuticals*, 80 Fed. Reg. at 55,528 ("[T]he fact that such documentation is not required by DEA regulations or any established industry standard . . . is beside the point given that Respondent represented to the Agency that it would maintain such documentation.").

Virtus_DEA000008

37. DEA's analysis identified 995 instances where Woodfield Distribution filled an order for a controlled substance for a customer who had placed an order for the same quantity of the same product in the previous seven days.

38. DEA's analysis identified 1,190 instances where Woodfield filled an order for a controlled substance that exceeded two times the monthly average of orders for that product distributed to that customer. On 140 of those occasions, the order for controlled substances filled by Woodfield Distribution exceeded *five times* the monthly average of orders for that product purchased by that customer.

39. The failure of Woodfield Distribution to "flag" thousands of orders of controlled substances that met its internal criteria for "suspiciousness"—much less to investigate these orders or document the resolution of such investigation—represents a failure by Woodfield Distribution to comply with its own policies and procedures for verifying the legitimacy of orders for controlled substances. Woodfield Distribution's broader failure to design and operate a system to detect and report suspicious orders, constitutes an ongoing violation of 21 C.F.R. § 1301.74(b).

**Failure to Substantially Comply with the Physical Security Requirements**

40. Registrants must substantially comply with the physical security requirements set forth in 21 C.F.R. §§ 1301.71-77. "Substantial compliance with the [physical security] standards . . . may be deemed sufficient by the Administrator after evaluation of the overall security system and needs of the applicant or registrant." 21 C.F.R. § 1301.71(b).

41. In evaluating the overall security system of a registrant or applicant, the Administrator may consider any or all of fifteen specifically enumerated factors "as he may deem relevant to the need for strict compliance with security requirements[.]" *Id.*

42. DEA investigators conducted inspections of Woodfield Distribution's facilities on March 9-11, 2020; August 21, 2020; and November 10, 2020. During these inspections, DEA investigators observed numerous violations of the physical security standards set forth in the regulations. These violations included, but were not limited to, the following:

   a. Unsecured Controlled Substances: Schedule III through V controlled substances must be properly stored in a secure storage area. *See* 21 C.F.R. 1301.72(b). Woodfield Distribution routinely stored large quantities of such controlled substances in non-secure areas of its warehouse. Specifically, DEA investigators observed at least the following controlled substances stored in unsecured aisles:

      i. On March 9-11, 2020, pallets of tramadol and acetaminophen-caffeine-dihydrocodeine bitartrate combination products, Schedule III controlled substances.

Virtus_DEA000009

ii. On August 21, 2020, more than 45 pallets of controlled substances consisting of either guaifenesin with codeine, phendimetrazine, phenobarbital, or tramadol. Woodfield Distribution falsely recorded these controlled substances as being stored in its controlled substance cage. In addition, many of the unsecured boxes of controlled substances on these pallets were torn open, either awaiting destruction or being used to fill orders.

iii. On November 10, 2020, ten pallets of controlled substances, consisting of either phenobarbital or phendimetrazine. Woodfield Distribution falsely recorded many of these controlled substances as being stored in its controlled substance cage. In addition, many of the unsecured boxes of controlled substances on these pallets were torn open, either awaiting destruction or being used to fill orders.

iv. In March 2020 and August 2020, when DEA investigators inquired about these unsecured controlled substances, Woodfield Distribution management responded that the controlled substance cage was too full. In November 2020, Woodfield Distribution management told DEA investigators it had moved certain controlled substances to make room to fill orders. Management also indicated they had been unaware that other controlled substances were not being stored inside the cage.

b. <u>Inadequate Alarm System:</u> Woodfield Distribution's controlled substance cage must be equipped with an alarm system as sort forth in 21 C.F.R. § 1301.72(b)(4)(v). Woodfield Distribution employees routinely bypassed the alarm systems in the controlled substance cage.

i. According to records maintained by Woodfield Distribution's security monitoring company, between March 12, 2020, and September 21, 2020, Woodfield Distribution employees bypassed alarms from four zones covering the controlled substance cage (including the cage door) at least 124 times.

ii Woodfield Distribution employees continued to bypass these alarm zones even though DEA investigators warned against this practice during both the March 2020 and August 2020 inspections. Despite these repeated warnings, these bypasses continued until at least September 21, 2020.

c. <u>Inadequate Locking of Controlled Substance Cage:</u> Woodfield Distribution's controlled substance cage must be equipped with "a door which is kept closed and locked at all times when not in use and when in use is kept under direct observation of a responsible employee or agent of the registrant is permitted in lieu of a self-closing, self-locking door." 21 C.F.R. § 1301.72(b)(4)(iv) & (b)(3)(ii). In addition, "Locking devices for such doors shall be either of the multiple-position combination or key lock type and . . . [i]n the case of key locks, shall require key control which limits access to a limited number of employees[.]" *Id.*

Virtus_DEA000010

    i. During the March 9, 2020 inspection, the door was broken and could not be locked.

    ii. During the subsequent inspections, a padlock had been placed on the door; however, the key to the padlock was kept on a table next to the door in an unsupervised, unsecured box in plain view.

  d. <u>Other Security Issues:</u> In addition to the above violations, DEA investigators discovered the following additional issues related to Woodfield Distribution's controlled substance cage during the inspections in March, August, and November 2020:

    i. Between October 6, 2020, and October 30, 2020, the security cameras in the warehouse, including those covering the controlled substance cage, were inoperable. During this time, Woodfield Distribution received at least 18,000 bottles of Schedule II through V controlled substances.

    ii. On March 9, 2020, and November 10, 2020, DEA investigators observed non-controlled substances being stored in the controlled substance cage, without written approval from DEA, in violation of 21 C.F.R. § 1301.72(b)(8)(ii).

## <u>WOODFIELD PHARMACEUTICAL, LLC</u>

43. Woodfield Pharma is currently registered with the DEA as a manufacturer in Schedules I through V, and a manufacturer of List 1 chemicals, under DEA Certificate of Registration No. ██████████ at 10863 Rockley Road, Houston, Texas 77099. This Certificate of Registration expires by its own terms on May 31, 2022.

44. Woodfield Pharma is licensed by the Texas Department of State Health Services as a prescription drug manufacturer under license number 1001461. Woodfield Pharma's state license expires by its own terms on July 17, 2022.

45. As discussed below, DEA's investigation revealed that significant quantities of controlled substances were removed from Woodfield Pharma without proper documentation or accounting and that Woodfield Pharma had connections to a suspected drug trafficking organization.

### FAILURE TO MAINTAIN EFFECTIVE CONTROLS AGAINST DIVERSION

#### <u>Violations Regarding Wrongfully Removed Controlled Substances</u>

46. "Recordkeeping is one of the CSA's principal tools for preventing the diversion of controlled substances." *Wayne Pharmacy*, 85 Fed. Reg. at 63,582. Recordkeeping is one of the central features of the CSA's regulatory regime because "a registrant's accurate and diligent adherence to this obligation is absolutely essential to protect against the diversion of controlled substances." *Superior Pharmacy*, 81 Fed. Reg. at 31,337.

Virtus_DEA000011

47. Where a registrant "is abjectly unable to account for extraordinary quantities of controlled substances, the Agency has held that it has committed acts which render its registration inconsistent with the public interest." *Top RX Pharmacy*, 78 Fed. Reg. at 26,084 (quoting *Ideal Pharmacy Care*, 76 Fed. Reg. at 51,416). Further, DEA has previously held that "willingness to falsify records . . . makes questionable [a registrant's] commitment to the DEA statutory and regulatory requirements designed to protect the public from the diversion of controlled substances." *Ace Wholesale & Trading Co.*, 67 Fed. Reg. 12,574, 12,576 (2002).

48. As a manufacturer, Woodfield Pharma must, *inter alia*, "maintain, on a current basis, a complete and accurate record of each substance manufactured, imported, received, sold, delivered, exported, or otherwise disposed of by him/her, and each inner liner, sealed inner liner, and unused and returned mail-back package[.]" 21 C.F.R. § 1304.21(a); *see also* 21 C.F.R. § 1304.22(a) (specific recordkeeping requirements for manufacturers).

49. Additionally, "employees who possess, sell, use or divert controlled substances . . . shall . . . immediately become the subject of independent action regarding their continued employment. The employer will assess the seriousness of the employee's violation, the position of responsibility held by the employee, past record of employment, etc., in determining whether to suspend, transfer, terminate or take other action against the employee." 21 C.F.R. § 1301.92.

50. On or about October 1, 2019, two Woodfield Pharma employees entered the controlled substances vault on the premises of Woodfield Pharma after business hours. These two employees removed at least codeine, a Schedule II controlled substance, from the vault, and left the premises with controlled substances they had removed. These employees failed to document that they removed these controlled substances from the vault. Instead, they falsely documented that they had removed only a "Data Logger."

51. Notwithstanding the fact that this removal of controlled substances was recorded by Woodfield Pharma's video security system, and that Woodfield Pharma discovered the falsification of records, to DEA's knowledge, the two employees were never subjected to meaningful disciplinary action regarding this event and remain employed at Woodfield Pharma.

## CONNECTIONS TO DRUG TRAFFICKING ORGANIZATION

52. In determining whether a manufacturer's registration is consistent with the public interest, DEA is to consider "such other factors as may be relevant to and consistent with the public health and safety." 21 U.S.C. § 823(a)(6) & (d)(6).

53. On February 22, 2021, DEA received a tip from a confidential source (CS) that Woodfield Pharma planned to deliver hundreds of gallons of suspected promethazine, a non-controlled substance, to members of a suspected drug trafficking organization (DTO). The CS had observed Woodfield Pharma employees loading a truck with 55-

12

Virtus_DEA000012

gallon drums. DEA investigators then followed the truck to a warehouse leased by a member of the suspected DTO, and observed members of the suspected DTO unloading the same 55-gallon drums identified by the CS into the warehouse.

54. On February 23, 2021, DEA executed a search warrant at the warehouse. DEA discovered suspected promethazine as well as drug trafficking paraphernalia, including, but not limited to, 36 55-gallon drums; 291 bottles containing suspected promethazine; approximately 45,000 counterfeit labels for either promethazine or promethazine with codeine, a Schedule V controlled substance; a volumetric filling machine; capping machines; and a pill press.

55. On March 1, 2021, DEA seized a Federal Express package containing $7,000 in U.S. currency, provided by a member of the suspected DTO and addressed to Adam Runsdorf—the president and sole owner of both Woodfield Distribution and Woodfield Pharma.

56. Woodfield Pharma's paid participation in illicit activity by a suspected DTO demonstrates that Woodfield Pharma's continued registration is not consistent with the public health and safety. *See Wonderyears, Inc.*, 74 Fed. Reg. 457, 458 n.2 (2009) (noting that respondent's "violations of federal and state laws in distributing and importing" a non-controlled substance "are relevant in assessing whether it would comply with the Controlled Substances Act.").

## COMMON OWNERSHIP OF THE WOODFIELD ENTITIES

57. "[W]here misconduct has previously been proved with respect to the owners, officers, or key employees of a [registrant]," DEA can revoke the registration of a second, related, registrant, "where the Government shows that such individuals have influence over the management or control of the second [entity]." *Superior Pharmacy*, 81 Fed. Reg. at 31,341 n.71.

58. "Further, the Agency may revoke a registration, even if there is no misconduct that can be attributed to the registration, if the Agency finds that the registrant committed egregious misconduct under a second registration." *Morning Star Pharmacy & Medical Supply 1*, 85 Fed. Reg. 51,045, 51,062 (2020).

59. Woodfield Distribution and Woodfield Pharma are commonly owned. Specifically, Adam Runsdorf is the president and sole owner of both Woodfield Distribution and Woodfield Pharma. As such, Mr. Runsdorf exercises significant influence and control over both Woodfield Distribution and Woodfield Pharma.

60. Given the fact that the same individual exercises management and control over both entities, the misconduct of either entity is relevant to the determination of whether the other can be entrusted with a DEA registration. *See Morning Star*, 85 Fed. Reg. at 51,062 ("Due to the commonality of ownership, management, and key employees between Respondent Pharmacy and Cedar Hill, any misconduct related to controlled

Virtus_DEA000013

substances at Cedar Hill is relevant to the determination of whether Respondent Pharmacy can be entrusted with registration.").

## IMMINENT DANGER TO THE PUBLIC HEALTH AND SAFETY

61. Due to Woodfield's manifest failure to maintain effective controls against the diversion of controlled substances, including the persistent and comprehensive failure to maintain complete and accurate records, to report thefts or significant losses when appropriate, to detect and report suspicious orders, and to comply with the physical security requirements imposed on registrants, Woodfield's continued operation poses an "imminent danger to the public health or safety" within the meaning of 21 U.S.C. 824(d).

IN view of the foregoing, and pursuant to 21 U.S.C. §§ 823(b) and 824(a)(4), it is my preliminary finding that Woodfield's continued registration is inconsistent with the public interest. It is my preliminary finding that Woodfield has failed to maintain effective controls against the diversion of controlled substances, including the persistent and comprehensive failure to maintain complete and accurate records, to detect and report suspicious orders, and to comply with the physical security requirements imposed on registrants. It is also my preliminary finding, significantly in light of the rampant and deadly problem of prescription controlled substance abuse, that Woodfield's continued registration during the pendency of these proceedings would constitute an imminent danger to the public health or safety because of the substantial likelihood that Woodfield's failure to maintain effective controls against diversion will allow the diversion of controlled substances unless Woodfield's DEA CORs are suspended. Under the facts and circumstances described herein, it is my conclusion that Woodfield's continued registration while these proceedings are pending constitutes an imminent danger to the public health and safety. *See* 21 U.S.C. § 824(d). Accordingly, pursuant to the provisions of 21 U.S.C. § 824(d) and 21 C.F.R. § 1301.36(e), and the authority granted me under 28 C.F.R. § 0.100, DEA COR Nos. ████████████████████ are hereby suspended, effective immediately. Such suspension shall remain in effect until a final determination is reached in these proceedings.

PURSUANT to 21 U.S.C. § 824(f) and 21 C.F.R. § 1301.36(f), the Special Agents and Diversion Investigators of the DEA who serve this Order to Show Cause and Immediate Suspension of Registration are authorized to place under seal or to remove for safekeeping all controlled substances that Woodfield possesses pursuant to the registrations that I have herein suspended. The said Agents and Investigators are also directed to take into their possession DEA COR Nos. ████████████████████ and any unused controlled substance ordering forms.

THE following procedures are available to Woodfield in this matter:

1. Within 30 days after the date of receipt of this Order to Show Cause and Immediate Suspension of Registration, Woodfield may file with DEA a written request for a hearing in the form set forth in 21 C.F.R. § 1316.47. *See* 21 C.F.R. § 1301.43(a). If Woodfield fails to file such a request, the hearing shall be cancelled in accordance with paragraph 3, below.

14

2. Within 30 days after the date of receipt of this Order to Show Cause and Immediate Suspension of Registration, Woodfield may file with DEA a waiver of hearing together with a written statement regarding Woodfield's position on the matters of fact and law involved. *See* 21 C.F.R. § 1301.43(c).

3. Should Woodfield decline to file a request for a hearing, or should Woodfield request a hearing and then fail to appear at the designated hearing, Woodfield shall be deemed to have waived the right to a hearing and DEA may cancel such hearing, and I may enter my final order in this matter without a hearing based upon the evidence presented to me. *See* 21 C.F.R. §§ 1301.43(d) and 1301.43(e).

Requests for hearing should be filed by email with the Office of Administrative Law Judges at the following address: ECF-DEA@dea.gov, with a copy simultaneously provided to the Government at the following address: DEA.Registration.Litigation@dea.gov. Other correspondence concerning this matter, including requests referenced in paragraphs 1 and 2 above, should be addressed to the Hearing Clerk, Office of Administrative Law Judges, Drug Enforcement Administration, 8701 Morrissette Drive, Springfield, VA 22152. Matters are deemed filed upon receipt by the Hearing Clerk. *See* 21 C.F.R. § 1316.45. A copy of the same shall also be served separately on Government counsel, John E. Beerbower, and be addressed to the Office of Chief Counsel, Diversion and Regulatory Litigation, 8701 Morrissette Drive, Springfield, VA 22152.

Anne Milgram
Administrator
Drug Enforcement Administration

cc: Hearing Clerk, Office of Administrative Law Judges
    John E. Beerbower, Counsel for the Government

15

Virtus_DEA000015

**U.S. DEPARTMENT OF JUSTICE/DRUG ENFORCEMENT ADMINISTRATION**
**SUBPOENA**

In the matter of the investigation of
Case No: M3-20-2030
Subpoena No. M3-21-214722

**TO:** Virtus Pharmaceuticals LLC

**ATTN:** David S. Schumacher, P.C.

**AT:** 2050 Cabot Blvd West, Suite 200 Langhorne, PA 19047

By the service of this subpoena on you by Ian D Brecht who is authorized to serve it, you are hereby commanded and required to appear before Ian D Brecht, an officer of the Drug Enforcement Administration, to give testimony and bring with you and produce for examination the following books, records, and papers at the time and place hereinafter set forth:

Pursuant to an investigation of violations of 21 U.S.C. Section 801 et seq., please provide the following for the dates between 01/01/2018 - 03/31/2021 Central (CST):

Any and all business records pertaining to controlled substance orders involving Woodfield Distribution, LLC, 1113 Gillingham Lane, Ste. A, Sugar Land, Texas, for the period of January 1, 2018 through March 31, 2021.

Please do not disclose the existence of this request or investigation for an indefinite time period. Any such disclosure could impede the criminal investigation being conducted and interfere with the enforcement of the Controlled Substances Act.

Please direct questions concerning this subpoena and/or responses to DI Ian D Brecht, 571-324-7742. In lieu of personal appearance, please email records to Ian.D.Brecht@usdoj.gov .

Please provide Certification of Records with response.

Place and time for appearance: At 1433 WEST SOUTH LOOP 600 HOUSTON, TX 77027-9506 US on the 30th day of April 2021 at 05:00 PM. In lieu of personal appearance, please email records to Ian.D.Brecht@usdoj.gov.

Failure to comply with this subpoena will render you liable to proceedings in the district court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience.

Issued under authority of Sec. 506 of the Comprehensive Drug
Abuse Prevention and Control Act of 1970, Public Law No. 91-513
(21 U.S.C. 876)
**ORIGINAL**

Signature: *Katherine Brown*

Katherine Y Brown
DPM

Issued this 1st day of April 2021

FORM DEA-79

Virtus_DEA000016

**Public Law 513-91st Congress**
**2nd Session**
**H.R. 18583**
**AN ACT**

SEC. 506 (a) In any investigation relating to his functions under this title with respect to controlled substances, listed chemicals, tableting machines, or encapsulating machines, the Attorney General may subpoena witnesses, compel the attendance and testimony of witnesses, and require the production any records (including books, papers, documents, and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material to the investigation. The attendance of witnesses and the production of records may be required from any place in any State or in any territory or other place subject to the jurisdiction of the United States at any designated place of hearing; except that a witness shall not be required to appear at any hearing more than 500 miles distant from the place where he was served with a subpoena. Witnesses summoned under this section shall be paid the same fees and mileage that are paid witnesses in the courts of the United States

(b) A subpoena issued under this section may be served by the person designated in the subpoena to serve it. Service upon a natural person may be made by personal delivery of the subpoena to him. Service may be made upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering the subpoena to an officer, to a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. The affidavit of the person serving the subpoena entered on a true copy thereof by the person serving it shall be proof of service.

(c) In the case of contumacy by or refusal to obey a subpoena to any person, the Attorney General may invoke the aid of any court in the United States within the jurisdiction of which the investigation is carried on or of which the subpoenaed person is an inhabitant, or in which he carries on business or may be found, to compel compliance with the subpoena. The court may issue an order requiring the subpoenaed person to appear before the Attorney General to produce records, if so ordered, or to give testimony touching the matter under investigation. Any failure to obey the order of the court may be punished by the court as a contempt thereof. All process in any such case may be served in any judicial district in which such person may be found.

| | |
|---|---|
| **From:** | Brecht, Ian D |
| **To:** | David S. Schumacher |
| **Subject:** | Re: Virtus Pharmaceuticals |
| **Attachments:** | image001.png |
| | image002.jpg |
| | image003.jpg |

John E. Beerbower

Drug Enforcement Administration

Office of Chief Counsel

Diversion and Regulatory Litigation Section

(office) (571) 362-7905

(email) john.e.beerbower@usdoj.gov

Mailing Address: 8701 Morrissette Drive, Springfield, VA 22152

Sent from my iPhone

On Aug 12, 2021, at 10:41 AM, David S. Schumacher <dschumacher@health-law.com> wrote:

Hi Ian – it's David Schumacher, counsel for Virtus Pharmaceuticals. I have an urgent issue that I'd like to discuss with you. Are you free?

Thanks,

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**

DIRECT: +1 617.532.2704    MAIN: +1 617.532.2700    MOBILE: +1 617.688.2398

dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Wednesday, July 7, 2021 4:09 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**EXTERNAL EMAIL MESSAGE**

Excellent! Thanks again!

Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Wednesday, July 7, 2021 1:58 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Actually I just received it. It is attached.

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Wednesday, July 7, 2021 2:13 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Sounds good. Thanks, David.

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Wednesday, July 7, 2021 12:01 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

I have sent it to them for their signature. Let me follow up. I should be able to get this to you this week.

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com  |  www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Wednesday, July 7, 2021 12:53 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hi David,

I wanted to follow up on the Virtus business records affidavit and see if you had a timeline?

Thanks,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

---

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Monday, June 28, 2021 4:33 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

No problem – will get one prepared.

**David S. Schumacher**

---

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

---

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Monday, June 28, 2021 5:02 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

David,

As a follow-up to our phone conversation, please provide a business records affidavit for the previous Virtus documents produced regarding Woodfield Distribution.

Thank you again,
Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

---

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Monday, May 31, 2021 2:26 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Ian,

I checked with Virtus, and here are the answers I received to your questions:

Does Virtus have records for the quantity and type of controlled substances previous and currently stored at Woodfield during a specific timeframe, or just dates that orders are received and fulfilled?



Also, can you please clarify what the column "PGI Date" represents? Is this the date controlled substances were shipped, received, or other?

PGI Date is the date a product was shipped outbound to the customer from Woodfield. This is also the date the customer receives an invoice.

I hope this helps. Let me know if you need additional information.

David


**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Monday, May 24, 2021 4:13 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>; John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals


**\*\*EXTERNAL EMAIL MESSAGE\*\***


Hi David and John,

I hope this message finds you well. First off, thank you for your previous responses and documents. I am following up with another question posed by our counsel concerning the previous Administrative Subpoena. Does Virtus have records for the quantity and type of controlled substances previous and currently stored at Woodfield during a specific timeframe, or just dates that orders are received and fulfilled? Also, can you please clarify what the column "PGI Date" represents? Is this the date controlled substances were shipped, received, or other?

Thank you in advance for your clarification. Please feel free to call me with any questions.

Regards,

Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742
Cell: █████████

---

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Wednesday, April 21, 2021 9:55 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>; John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

Ian, I think John is out for the rest of day, so he probably won't make the production until tomorrow.

**David S. Schumacher**

---

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704   MAIN: 617.532.2700   MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

---

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

---

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Wednesday, April 21, 2021 10:54 AM
**To:** John A. Ferrigno <jferrigno@HEALTH-LAW.COM>; David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hi John,

I sent out a link to the USAfx folder this morning. Let me know if you have not received it.

Thanks,
Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

---

**From:** John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Sent:** Tuesday, April 20, 2021 8:46 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>; David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

Hello Ian, on the USAFX site I typically will see a folder with the case name when I've been invited to it. I don't see the folder for this case. Can you please confirm that I've been invited to the folder. Thank you.

**John A. Ferrigno**
LITIGATION SUPPORT MANAGER

---

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 310.551.8162    MAIN: 310.551.8111    FAX: 310.551.8181
jferrigno@health-law.com | www.health-law.com

---

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

---

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Tuesday, April 20, 2021 9:19 AM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Cc:** John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

John, thank you in advance for uploading the documents into USAfx.

David – can you please give me a call when you're available? My work cell is 

Thanks,
Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

---

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Tuesday, April 20, 2021 10:40 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Cc:** John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

Ian, if you could, please inform the AUSAs and trial attorneys that I made this request. In my experience, it is typical for defense counsel to speak with the AUSA on the case.

Separately, I am including John Ferrigno on this message. John is our litigation technology specialist. He has made a number of productions via USAfx, and he will be the person doing it here. Thanks.

**David S. Schumacher**

---

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704   MAIN: 617.532.2700   MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

---

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Tuesday, April 20, 2021 10:51 AM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Morning David,

Excellent! USAfx is preferred. Do you want me to set up a USAfx folder?

The information requested from Virtus is tied to multiple cases each with different AUSAs and DOJ attorneys from various districts so I would not be able to share one single contact. Additionally, I have not received permission from our counsel to share their contact information at this time but will direct them to contact you for any questions concerning Virtus.

Thank you,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Tuesday, April 20, 2021 7:47 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Hi Ian,

I have the spreadsheets that we discussed containing Virtus' order history with Woodfield, and additional information. How would you like to receive these? We can produce on Sharefile or USAfx. Also, is there an AUSA assigned to the case? If so, could

you provide contact information?

Thanks,

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Monday, April 12, 2021 12:36 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

You can call my cell ███████

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Monday, April 12, 2021 11:32 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Yes. What's the best number to call?

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and

may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

---

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Monday, April 12, 2021 12:31 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**<span style="color:red">**EXTERNAL EMAIL MESSAGE**</span>**

Hi David,

Yes, I'm available tomorrow morning to discuss the subpoena. Are you available at 10:00 AM (central)?

Thanks,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

---

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Monday, April 12, 2021 11:29 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Hi Ian. Do you have a moment tomorrow to discuss the Virtus subpoena? If so, let me know what times work.

Thanks very much.

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704   MAIN: 617.532.2700   MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Thursday, April 1, 2021 4:10 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

David,

Records should be sufficient at this time. Please include a certification of records with Virtus' response. Again, I'm happy to answer any questions that may arise while compiling the requested information.

Thank you,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Thursday, April 1, 2021 3:08 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

OK. Do you need testimony, or will the records be sufficient?

**David S. Schumacher**

---

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704   MAIN: 617.532.2700   MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

---

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

---

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Thursday, April 1, 2021 2:54 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

David,

Thank you for your patience and impeccable timing. Please see the attached subpoena. Let me know if you or your client have any questions.

Respectfully,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

---

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Thursday, April 1, 2021 1:43 PM

**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

No rush on our end, Ian. You know where to find me.

David

### David S. Schumacher

---

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

---

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Thursday, April 1, 2021 2:36 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hello Mr. Schumacher,

I apologize for the delayed response. I received your email correspondence and will send you the aforementioned subpoena when it is available to me.

Thank you,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Thursday, April 1, 2021 9:03 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Investigator Brecht,

Just confirming that you received this email and that you are aware that I represent Virtus Pharmaceuticals, so they should not be contacted without going through me. Thanks very much.

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** David S. Schumacher
**Sent:** Monday, March 29, 2021 12:34 PM
**To:** Ian.D.Brecht@usdoj.gov
**Subject:** Virtus Pharmaceuticals

Investigator Brecht,

It was nice to speak with you just now. As we discussed, I am authorized to accept service of the subpoena on behalf of Virtus Pharmaceuticals. Feel free to send it to me vial email.

Thanks,

David

**David S. Schumacher**

<image002.jpg>

**HOOPER, LUNDY & BOOKMAN, P.C.**
470 Atlantic Avenue, 1201
Boston, MA 02210
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398

dschumacher@health-law.com | www.health-law.com

<image003.jpg>

BOSTON | DENVER | LOS ANGELES | SAN DIEGO | SAN FRANCISCO | WASHINGTON, DC

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and
may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended
recipient, be advised that any dissemination, distribution, or use of the contents of this message is
prohibited. If you have received this message in error, please reply that you received the message in error
and delete or destroy the email and any attachment.

| | |
|---|---|
| **From:** | Brecht, Ian D |
| **To:** | "David S. Schumacher" |
| **Subject:** | RE: Virtus Pharmaceuticals |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.jpg |
| | DEA Subpoena M3-21-214722.pdf |

David,

Thank you for your patience and impeccable timing. Please see the attached subpoena. Let me know if you or your client have any questions.

Respectfully,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742



*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited. If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher
**Sent:** Thursday, April 1, 2021 1:43 PM
**To:** Brecht, Ian D
**Subject:** RE: Virtus Pharmaceuticals

No rush on our end, Ian. You know where to find me.

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704     MAIN: 617.532.2700     MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Thursday, April 1, 2021 2:36 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hello Mr. Schumacher,

I apologize for the delayed response. I received your email correspondence and will send you the aforementioned subpoena when it is available to me.

Thank you,
**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742



*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited. If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Thursday, April 1, 2021 9:03 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Investigator Brecht,

Just confirming that you received this email and that you are aware that I represent Virtus Pharmaceuticals, so they should not be contacted without going through me. Thanks very much.

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704     MAIN: 617.532.2700     MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** David S. Schumacher
**Sent:** Monday, March 29, 2021 12:34 PM
**To:** Ian.D.Brecht@usdoj.gov
**Subject:** Virtus Pharmaceuticals

Investigator Brecht,

It was nice to speak with you just now. As we discussed, I am authorized to accept service of the subpoena on behalf of Virtus Pharmaceuticals. Feel free to send it to me vial email.

Thanks,
David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
470 Atlantic Avenue, 1201
Boston,MA02210
DIRECT: 617.532.2704     MAIN: 617.532.2700     MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

BOSTON | DENVER | LOS ANGELES | SAN DIEGO | SAN FRANCISCO | WASHINGTON, DC

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

Virtus_DEA000037

| | |
|---|---|
| **From:** | David S. Schumacher |
| **To:** | Brecht, Ian D |
| **Subject:** | RE: Virtus Pharmaceuticals |
| **Date:** | Wednesday, July 7, 2021 2:59:09 PM |
| **Attachments:** | image001.png |
| | image002.jpg |
| | image003.jpg |
| | Virtus business records affidavit AP 07_July_2021.pdf |

Actually I just received it. It is attached.

David


**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**

DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398

dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Wednesday, July 7, 2021 2:13 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals


**\*\*EXTERNAL EMAIL MESSAGE\*\***


Sounds good. Thanks, David.

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742



*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Wednesday, July 7, 2021 12:01 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

I have sent it to them for their signature. Let me follow up. I should be able to get this to you this week.

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Wednesday, July 7, 2021 12:53 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hi David,

I wanted to follow up on the Virtus business records affidavit and see if you had a timeline?

Thanks,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742



*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon*

*this information by persons or entities other than the intended recipient is prohibited. If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Monday, June 28, 2021 4:33 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

No problem – will get one prepared.

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Monday, June 28, 2021 5:02 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

David,

As a follow-up to our phone conversation, please provide a business records affidavit for the previous Virtus documents produced regarding Woodfield Distribution.

Thank you again,
Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742



*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited. If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Monday, May 31, 2021 2:26 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Ian,

I checked with Virtus, and here are the answers I received to your questions:

Does Virtus have records for the quantity and type of controlled substances previous and currently stored at Woodfield during a specific timeframe, or just dates that orders are received and fulfilled?



Also, can you please clarify what the column "PGI Date" represents? Is this the date controlled substances were shipped, received, or other?

<span style="color:red">PGI Date is the date a product was shipped outbound to the customer from Woodfield. This is also the date the customer receives an invoice.</span>

I hope this helps. Let me know if you need additional information.

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Monday, May 24, 2021 4:13 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>; John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**EXTERNAL EMAIL MESSAGE****

Hi David and John,

I hope this message finds you well. First off, thank you for your previous responses and documents. I am following up with another question posed by our counsel concerning the previous Administrative Subpoena. Does Virtus have records for the quantity and type of controlled substances previous and currently stored at Woodfield during a specific timeframe, or just dates that orders are received and fulfilled? Also, can you please clarify what the column "PGI Date" represents? Is this the date controlled substances were shipped, received, or other?

Thank you in advance for your clarification. Please feel free to call me with any questions.

Regards,
Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742
Cell: █████████

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Wednesday, April 21, 2021 9:55 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>; John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

Ian, I think John is out for the rest of day, so he probably won't make the production until tomorrow.

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that

you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Wednesday, April 21, 2021 10:54 AM
**To:** John A. Ferrigno <jferrigno@HEALTH-LAW.COM>; David S. Schumacher
<dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hi John,

I sent out a link to the USAfx folder this morning. Let me know if you have not received it.

Thanks,
Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742



*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Sent:** Tuesday, April 20, 2021 8:46 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>; David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

Hello Ian, on the USAFX site I typically will see a folder with the case name when I've been invited to it. I don't see the folder for this case. Can you please confirm that I've been invited to the folder. Thank you.

**John A. Ferrigno**
LITIGATION SUPPORT MANAGER

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 310.551.8162     MAIN: 310.551.8111     FAX: 310.551.8181
jferrigno@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Tuesday, April 20, 2021 9:19 AM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Cc:** John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

John, thank you in advance for uploading the documents into USAfx.

David – can you please give me a call when you're available? My work cell is .

Thanks,
Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742



*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Tuesday, April 20, 2021 10:40 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Cc:** John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

Ian, if you could, please inform the AUSAs and trial attorneys that I made this request. In my experience, it is typical for defense counsel to speak with the AUSA on the case.

Separately, I am including John Ferrigno on this message. John is our litigation technology specialist. He has made a number of productions via USAfx, and he will be the person doing it here. Thanks.

**David S. Schumacher**

---

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704      MAIN: 617.532.2700      MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

---

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Tuesday, April 20, 2021 10:51 AM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**<span style="color:red">**EXTERNAL EMAIL MESSAGE**</span>**

Morning David,

Excellent! USAfx is preferred. Do you want me to set up a USAfx folder?

The information requested from Virtus is tied to multiple cases each with different AUSAs and DOJ attorneys from various districts so I would not be able to share one single contact. Additionally, I have not received permission from our counsel to share their contact information at this time but will direct them to contact you for any questions concerning Virtus.

Thank you,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742



*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Tuesday, April 20, 2021 7:47 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Hi Ian,

I have the spreadsheets that we discussed containing Virtus' order history with Woodfield, and additional information. How would you like to receive these? We can produce on Sharefile or USAfx. Also, is there an AUSA assigned to the case? If so, could you provide contact information?

Thanks,

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Monday, April 12, 2021 12:36 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

You can call my cell ███████ .

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Monday, April 12, 2021 11:32 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Yes. What's the best number to call?

**David S. Schumacher**

---

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704   MAIN: 617.532.2700   MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

---

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

---

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Monday, April 12, 2021 12:31 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hi David,

Yes, I'm available tomorrow morning to discuss the subpoena. Are you available at 10:00 AM (central)?

Thanks,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742



*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited. If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Monday, April 12, 2021 11:29 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Hi Ian. Do you have a moment tomorrow to discuss the Virtus subpoena? If so, let me know what times work.

Thanks very much.

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Thursday, April 1, 2021 4:10 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

David,

Records should be sufficient at this time. Please include a certification of records with Virtus' response. Again, I'm happy to answer any questions that may arise while compiling the requested information.

Thank you,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742



*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <<u>dschumacher@HEALTH-LAW.COM</u>>
**Sent:** Thursday, April 1, 2021 3:08 PM
**To:** Brecht, Ian D <<u>IDBrecht@dea.usdoj.gov</u>>
**Subject:** RE: Virtus Pharmaceuticals

OK. Do you need testimony, or will the records be sufficient?

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
<u>dschumacher@health-law.com</u> | <u>www.health-law.com</u>

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <<u>Ian.D.Brecht@usdoj.gov</u>>
**Sent:** Thursday, April 1, 2021 2:54 PM
**To:** David S. Schumacher <<u>dschumacher@HEALTH-LAW.COM</u>>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

David,

Thank you for your patience and impeccable timing. Please see the attached subpoena. Let me know if you or your client have any questions.

Respectfully,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742



*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Thursday, April 1, 2021 1:43 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

No rush on our end, Ian. You know where to find me.

David

### David S. Schumacher

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Thursday, April 1, 2021 2:36 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hello Mr. Schumacher,

I apologize for the delayed response. I received your email correspondence and will send you the aforementioned subpoena when it is available to me.

Thank you,

**Ian D. Brecht**

Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742



*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

---

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Thursday, April 1, 2021 9:03 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Investigator Brecht,

Just confirming that you received this email and that you are aware that I represent Virtus Pharmaceuticals, so they should not be contacted without going through me. Thanks very much.

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704   MAIN: 617.532.2700   MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

---

**From:** David S. Schumacher
**Sent:** Monday, March 29, 2021 12:34 PM
**To:** Ian.D.Brecht@usdoj.gov
**Subject:** Virtus Pharmaceuticals

Investigator Brecht,

It was nice to speak with you just now. As we discussed, I am authorized to accept service of the subpoena on behalf of Virtus Pharmaceuticals. Feel free to send it to me vial email.

Thanks,

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**

470 Atlantic Avenue, 1201
Boston, MA 02210
DIRECT: 617.532.2704     MAIN: 617.532.2700     MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

BOSTON | DENVER | LOS ANGELES | SAN DIEGO | SAN FRANCISCO | WASHINGTON, DC

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

| | |
|---|---|
| **From:** | David S. Schumacher |
| **To:** | Brecht, Ian D |
| **Cc:** | John A. Ferrigno |
| **Subject:** | Virtus Pharmaceuticals |
| **Date:** | Tuesday, April 20, 2021 9:14:28 PM |
| **Attachments:** | image003.png |
| | Virtus document production to DEA 4.21.21.pdf |

Ian,

Attached is a cover letter associated with Virtus Pharmaceuticals' document production. The production will be loaded onto USAfx.

Thanks very much.

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**

470 Atlantic Avenue, 1201
Boston,MA02210
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

BOSTON | DENVER | LOS ANGELES | SAN DIEGO | SAN FRANCISCO | WASHINGTON, DC

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

HOOPER, LUNDY & BOOKMAN, P.C.

HEALTH CARE LAWYERS & ADVISORS
470 ATLANTIC AVENUE, SUITE 1201
BOSTON, MASSACHUSETTS 02210
TELEPHONE (617) 532-2700
FACSIMILE
WEB SITE: WWW.HEALTH-LAW.COM

WRITER'S DIRECT DIAL NUMBER:
(617) 532-2704

WRITER'S E-MAIL ADDRESS:
DSCHUMACHER@HEALTH-LAW.COM

OFFICES ALSO LOCATED IN
LOS ANGELES
SAN DIEGO
SAN FRANCISCO
WASHINGTON, D.C.
DENVER

April 20, 2021

VIA EMAIL

Ian D. Brecht
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
1433 West Loop South
Houston, TX 77027

Re:   Subpoena No. M3-21-214722

Dear Investigator Brecht:

As you are aware, this firm represents Virtus Pharmaceuticals ("Virtus") in connection with the above-referenced subpoena.  Virtus is producing records in response to the subpoena. The production, Bates stamped Virtus000001-0000002, is being uploaded to the USAfx site. The password is Virtus001_'0a83uI2~.

Consistent with our discussions, this production contains two spreadsheets. The first spreadsheet represents orders filled by Woodfield Distribution for controlled substances manufactured by Virtus between 2018 and 2021. The second spreadsheet reflects Virtus' shipment shortage dashboard, which tracks any concealed shortages reported by Virtus customers. This tracking system began in 2019.

Please note that this letter and the materials being produced on the USAfx site contain sensitive, confidential, and proprietary business information and are, thus, entitled to protection as:  (1) "trade secrets and commercial or financial information" within the meaning of 5 U.S.C. § 552(b)(4); (2) confidential or trade secret information subject to the restrictions of 18 U.S.C. § 1905; and (3) "trade secrets and commercial or financial information which is privileged or confidential" as defined in 21 C.F.R. § 20.61.  Therefore, the documents include the notation "FOIA Confidential Treatment Requested."

Do not hesitate to contact me with any questions or concerns.

Virtus_DEA000054

HOOPER, LUNDY & BOOKMAN, P.C.
HEALTH CARE LAWYERS & ADVISORS

Ian D. Brecht.
April 20, 2021
Page 2


                              Very truly yours,


                              /s/ David Schumacher

                              David S. Schumacher

Virtus_DEA000055

CERTIFICATE OF AUTHENTICITY OF BUSINESS RECORDS

I, Ashleigh Preiss, declare, pursuant to Title 28, U.S.C. §1746, that I am employed by

Virtus Pharmaceuticals, LLC, and that my official title is Senior Director, Supply Chain and

Project Management. I further declare that I am a custodian of records of said business and that

each of the records attached hereto is the original or a duplicate (exact photocopy) of an original

record in the custody of Virtus Pharmaceuticals, LLC. I further state that:

1)      Such records were made at or near the time of occurrence of the matters set forth

by, or from information transmitted by, a person with knowledge of those matters.

2)      Such records were kept in the course of a regularly conducted business activity;

3)      The business activity made such records as a regular practice; and

4)      If the records are not originals, such records are duplicates of the originals.


I declare under penalty of perjury the foregoing is true and correct.

Ashleigh Preiss
Digitally signed by Ashleigh Preiss
Date: 2021.07.07 14:34:39 -04'00'

_____                              _____
Date                                                     Ashleigh Preiss

| | |
|---|---|
| **From:** | Beerbower, John E |
| **To:** | "David S. Schumacher" |
| **Cc:** | Joseph R. LaMagna; Locher, David M; Oblea, Erika K |
| **Subject:** | RE: Urgent question re: Woodfield Distributors matter (counsel for Virtus Pharmaceuticals) |
| **Date:** | Tuesday, August 24, 2021 2:41:00 PM |

David and Joe:

DEA has carefully considered the request to release seized controlled substances that were possessed by Woodfield Distribution, and in which Virtus Pharmaceuticals claims an ownership interest. DEA has concluded that, under the relevant law, a release of these controlled substances is not appropriate at this time.

I am still available for a call at 4:30 pm ET if there is anything you would like to discuss.

Respectfully,

John

_____

John E. Beerbower
Drug Enforcement Administration
Office of Chief Counsel
Diversion and Regulatory Litigation Section

(office) (571) 362-7905
(mobile) ████████████
(email) john.e.beerbower@dea.gov

Mailing Address: 8701 Morrissette Drive, Springfield, VA 22152

This communication (including any attachments) may contain confidential information, privileged material (including material protected as attorney work product or other applicable privileges), or constitute non-public information. Any use of this information by anyone other than the intended recipient is prohibited. If you have received this transmission in error, please immediately reply to the sender and delete this information from your system. Use, dissemination, distribution, or reproduction of this transmission by unintended recipients is not authorized and may be unlawful.

---

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Tuesday, August 24, 2021 1:23 PM
**To:** Beerbower, John E <John.E.Beerbower@dea.gov>
**Cc:** Joseph R. LaMagna <jlamagna@HEALTH-LAW.COM>
**Subject:** RE: Urgent question re: Woodfield Distributors matter (counsel for Virtus Pharmaceuticals)

Virtus_DEA000177

Hi John, following up on this. I don't think we need more than 10-15 minutes. What times do you have free today? I could speak any time. Thanks.

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: +1 617.532.2704    MAIN: +1 617.532.2700    MOBILE: +1 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** David S. Schumacher
**Sent:** Tuesday, August 24, 2021 10:59 AM
**To:** Beerbower, John E <John.E.Beerbower@dea.gov>
**Subject:** Re: Urgent question re: Woodfield Distributors matter (counsel for Virtus Pharmaceuticals)

John, are you free at 4 or 4:30 today to discuss Virtus? Thanks.

On Aug 18, 2021, at 11:46 AM, Beerbower, John E <John.E.Beerbower@dea.gov> wrote:

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hi Joe,

I can't comment on this either way.

Regards,

John

_____
John E. Beerbower
Drug Enforcement Administration
Office of Chief Counsel
Diversion and Regulatory Litigation Section

(office) (571) 362-7905
(mobile) ████████

(email) john.e.beerbower@dea.gov

Mailing Address: 8701 Morrissette Drive, Springfield, VA 22152

This communication (including any attachments) may contain confidential information, privileged material (including material protected as attorney work product or other applicable privileges), or constitute non-public information. Any use of this information by anyone other than the intended recipient is prohibited. If you have received this transmission in error, please immediately reply to the sender and delete this information from your system. Use, dissemination, distribution, or reproduction of this transmission by unintended recipients is not authorized and may be unlawful.

---

**From:** Joseph R. LaMagna <jlamagna@HEALTH-LAW.COM>
**Sent:** Wednesday, August 18, 2021 12:28 AM
**To:** Beerbower, John E <John.E.Beerbower@dea.gov>
**Cc:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Urgent question re: Woodfield Distributors matter (counsel for Virtus Pharmaceuticals)

Hi, John.  Thanks for taking the time to talk today.  Virtus is still in need of sending product to a registrant, and its contracted registrants outside of Woodfield's Sugar Land location is Woodfield's Bocca Raton location.  When we discussed this we understood that the Bocca Raton registration is still in good standing.  Virtus is evaluating other third-party distributors, but in the meanwhile, we wanted to inform you that it will have to send product to Bocca Raton, where, as we explained before, it already has some product.  If this poses any issues for the DEA, please let us know.  We expect a Thursday ship date, so please provide any feedback promptly.

Best,

Joe

**Joseph R. LaMagna**

---

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: +1 619.744.7305    MAIN: +1 619.744.7300    FAX: +1 619.230.0987
jlamagna@health-law.com | www.health-law.com

---

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

---

**From:** Beerbower, John E <John.E.Beerbower@dea.gov>
**Sent:** Tuesday, August 17, 2021 12:53 PM
**To:** Joseph R. LaMagna <jlamagna@HEALTH-LAW.COM>
**Cc:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Urgent question re: Woodfield Distributors matter (counsel for Virtus Pharmaceuticals)


**\*\*EXTERNAL EMAIL MESSAGE\*\***


That's fine.  I'll expect your call at ███████

John

---

**From:** Joseph R. LaMagna <jlamagna@HEALTH-LAW.COM>
**Sent:** Tuesday, August 17, 2021 3:48 PM
**To:** Beerbower, John E <John.E.Beerbower@dea.gov>
**Cc:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** Re: Urgent question re: Woodfield Distributors matter (counsel for Virtus Pharmaceuticals)

Thanks, John. Let's talk even if only briefly. We wanted to provide some thoughts for you and your colleagues to consider.

Sent from my mobile device.


On Aug 17, 2021, at 12:21 PM, Beerbower, John E <John.E.Beerbower@dea.gov> wrote:


**\*\*EXTERNAL EMAIL MESSAGE\*\***


Joe:

I just got out of all-day meetings.  I do not have any additional information at this time. I'm happy to talk to you at 4, but I don't really have anything to share.

John

_____

John E. Beerbower

Drug Enforcement Administration
Office of Chief Counsel
Diversion and Regulatory Litigation Section

(office) (571) 362-7905
(mobile) ███████
(email) john.e.beerbower@dea.gov

Mailing Address: 8701 Morrissette Drive, Springfield, VA 22152

This communication (including any attachments) may contain confidential information, privileged material (including material protected as attorney work product or other applicable privileges), or constitute non-public information. Any use of this information by anyone other than the intended recipient is prohibited. If you have received this transmission in error, please immediately reply to the sender and delete this information from your system. Use, dissemination, distribution, or reproduction of this transmission by unintended recipients is not authorized and may be unlawful.

---

**From:** Joseph R. LaMagna <jlamagna@HEALTH-LAW.COM>
**Sent:** Monday, August 16, 2021 4:25 PM
**To:** Beerbower, John E <John.E.Beerbower@dea.gov>; David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Urgent question re: Woodfield Distributors matter (counsel for Virtus Pharmaceuticals)

Thanks, John.  I understand DEA need additional time.  Could we still schedule a call for tomorrow afternoon working around your schedule? If there is no change in DEA's position, we might cancel the call, but Virtus would like to be sure we have some contact scheduled.

Please let me know your availability.

Best,

Joe

**Joseph R. LaMagna**

---

**HOOPER, LUNDY & BOOKMAN, P.C.**

DIRECT: +1 619.744.7305   MAIN: +1 619.744.7300   FAX: +1 619.230.0987

jlamagna@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Beerbower, John E <John.E.Beerbower@dea.gov>
**Sent:** Monday, August 16, 2021 12:55 PM
**To:** Joseph R. LaMagna <jlamagna@HEALTH-LAW.COM>; David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Urgent question re: Woodfield Distributors matter (counsel for Virtus Pharmaceuticals)

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Joe,

Thanks for the email.  I'm tied up the rest of today and most of tomorrow, but, also, I don't have any information to share yet on DEA's position. The question is working through appropriate channels and we'll be in touch. I'm happy to talk later this week, if you'd like, but will certainly tell you when I have something to share.

John

_____

John E. Beerbower
Drug Enforcement Administration
Office of Chief Counsel
Diversion and Regulatory Litigation Section

(office) (571) 362-7905
(mobile) ███████████
(email) john.e.beerbower@dea.gov

Mailing Address: 8701 Morrissette Drive, Springfield, VA 22152

This communication (including any attachments) may contain confidential information, privileged material (including material protected as attorney work product or other applicable privileges), or constitute non-public information. Any use of this information by anyone other than the

intended recipient is prohibited. If you have received this transmission in error, please immediately reply to the sender and delete this information from your system. Use, dissemination, distribution, or reproduction of this transmission by unintended recipients is not authorized and may be unlawful.

---

**From:** Joseph R. LaMagna <jlamagna@HEALTH-LAW.COM>
**Sent:** Monday, August 16, 2021 2:18 PM
**To:** Beerbower, John E <John.E.Beerbower@dea.gov>; David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Urgent question re: Woodfield Distributors matter (counsel for Virtus Pharmaceuticals)

Hi, John.  I wanted to follow up from our discussion last week. David is out of the office, but I am available this afternoon to discuss DEA's current position on Virtus' inventory that was at Woodfield's Sugar Land location. Please let me know your availability for a call this afternoon, if possible.

Thanks,

Joe

**Joseph R. LaMagna**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: +1 619.744.7305    MAIN: +1 619.744.7300    FAX: +1 619.230.0987
jlamagna@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

---

**From:** Beerbower, John E <John.E.Beerbower@dea.gov>
**Sent:** Thursday, August 12, 2021 10:06 AM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Cc:** Joseph R. LaMagna <jlamagna@HEALTH-LAW.COM>
**Subject:** RE: Urgent question re: Woodfield Distributors matter (counsel for Virtus Pharmaceuticals)

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Mr. Schumacher,

I should be able to talk at or after 3:30 ET, if that works.

John

_____

John E. Beerbower
Drug Enforcement Administration
Office of Chief Counsel
Diversion and Regulatory Litigation Section

(office) (571) 362-7905
(mobile) ██████████
(email) john.e.beerbower@usdoj.gov

Mailing Address: 8701 Morrissette Drive, Springfield, VA 22152

This communication (including any attachments) may contain confidential information, privileged material (including material protected as attorney work product or other applicable privileges), or constitute non-public information. Any use of this information by anyone other than the intended recipient is prohibited. If you have received this transmission in error, please immediately reply to the sender and delete this information from your system. Use, dissemination, distribution, or reproduction of this transmission by unintended recipients is not authorized and may be unlawful.

---

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Thursday, August 12, 2021 11:59 AM
**To:** Beerbower, John E <John.E.Beerbower@dea.gov>
**Cc:** Joseph R. LaMagna <jlamagna@HEALTH-LAW.COM>
**Subject:** Urgent question re: Woodfield Distributors matter (counsel for Virtus Pharmaceuticals)

Mr. Beerbower,

Hello, my name is David Schumacher, and I am counsel for Virtus Pharmaceuticals. We are aware of the enforcement action against Woodfield Distributors, and I have been in contact with Ian Brecht over

the last few months about this matter, including today. Virtus has been
extremely cooperative in all interactions with the DEA in this matter and I
think could fairly be characterized as an "innocent third party."

Unfortunately, the enforcement action has the potential to result in
extremely negative consequences for Virtus. I am hopeful that you have a
few moments today to speak about this. Do you have availability?

Thanks very much.

David

**David S. Schumacher**

—

**HOOPER, LUNDY & BOOKMAN, P.C.**
470 Atlantic Avenue, 1201
Boston, MA 02210
DIRECT: +1 617.532.2704    MAIN: +1 617.532.2700    MOBILE: +1 617.688.2398
dschumacher@health-law.com | www.health-law.com

—

BOSTON | DENVER | LOS ANGELES | SAN DIEGO | SAN FRANCISCO | WASHINGTON, DC

Disclaimer: This email, including attachments, is intended solely for the use of the intended
recipient and may be confidential, proprietary, or protected by any applicable privilege. If you
are not the intended recipient, be advised that any dissemination, distribution, or use of the
contents of this message is prohibited. If you have received this message in error, please reply
that you received the message in error and delete or destroy the email and any attachment.

| From: | Beerbower, John E |
|---|---|
| To: | "Joseph R. LaMagna"; David S. Schumacher; Karla L. Palmer |
| Cc: | Oblea, Erika K; Locher, David M; Michael Heesters |
| Subject: | RE: Virtus Pharmaceuticals |
| Date: | Thursday, August 26, 2021 4:58:00 PM |

Joe and David,

DEA has reviewed your emails from yesterday regarding the possibility of lifting or modifying the suspension order issued to Woodfield Distribution (Woodfield) as well as the proposal of a "waiver" by Woodfield of Woodfield's interest in the sealed controlled substances.

DEA cannot provide Virtus (a non-party) with additional information regarding the administrative action against Woodfield or the decision-making process regarding the same. However, we can convey that DEA has considered your proposals and is not willing to lift or modify the suspension of Woodfield's certificates of registration at this time.

Similarly, DEA has considered your proposal of a "waiver" to be provided by Woodfield. As we previously communicated, DEA believes that the controlled substances possessed by Woodfield at the time of the suspension were properly placed under seal and that a release of these controlled substances by DEA is not appropriate at this time.

Regards,

John


_____

John E. Beerbower
Drug Enforcement Administration
Office of Chief Counsel
Diversion and Regulatory Litigation Section

(office) (571) 362-7905
███████████████
(email) john.e.beerbower@dea.gov

Mailing Address: 8701 Morrissette Drive, Springfield, VA 22152

This communication (including any attachments) may contain confidential information, privileged material (including material protected as attorney work product or other applicable privileges), or constitute non-public information. Any use of this information by anyone other than the intended recipient is prohibited. If you have received this transmission in error, please immediately reply to the sender and delete this information from your system. Use, dissemination, distribution, or reproduction of this transmission by unintended recipients is not authorized and may be unlawful.

**From:** Joseph R. LaMagna <jlamagna@HEALTH-LAW.COM>
**Sent:** Wednesday, August 25, 2021 5:27 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>; Beerbower, John E
<John.E.Beerbower@dea.gov>; Karla L. Palmer <KPalmer@hpm.com>
**Cc:** Oblea, Erika K <Erika.K.Oblea@dea.gov>; Locher, David M <David.M.Locher@dea.gov>; Michael
Heesters <MHeesters@hpm.com>
**Subject:** RE: Virtus Pharmaceuticals

Hi, John.  I am adding litigation counsel for Virtus, Karla Palmer, to this chain.  I am also attaching a
release form Woodfield to be considered as part of Virtus' request that DEA accept the waiver from
Woodfield and release the Virtus products.  We request that DEA accept this waiver and exercise its
discretion that the drugs no longer need be placed under seal.  21 U.S.C. section 824(f) does not
require the government to place the drugs under seal in the first place, much less keep them under
seal for any defined period of time.  Therefore, the government may decide to lift the seal on the
drugs at any time, which would permit the release to Virtus' designee (at this time the registered
distributor location for Woodfield in Boca Raton).

Moreover, the statute only considers limitations on the government making a unilateral disposition
of the drugs until the time for appeal has passed.  The requirement to retain the product during the
time of appeal ensures the registrant has the ability to have the drugs returned upon a successful
appeal.  The statute was clearly contemplating that the registrant would have a continuing interest
in the product at issue.  However, the attached waiver explains that Woodfield does not have any
right or interest in the Virtus products at issue.  Therefore, there is no need to hold the drugs until
the period for appeals have passed under the statute – Woodfield is unequivocally permitted release
before then.

It would seem litigation would be an unnecessary burden on all parties.  Virtus requests that the
government exercise discretion to lift the seal on the drugs it seized, so Virtus can have the drugs
sent to a registrant.  In support, the attached waiver has been provided.  Virtus has also presented
other alternatives, including a modification to the suspensions as outlined below.

Kindly and promptly let us know a response.

Best,

Joe


**Joseph R. LaMagna**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: +1 619.744.7305     MAIN: +1 619.744.7300     FAX: +1 619.230.0987
jlamagna@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Wednesday, August 25, 2021 6:54 AM
**To:** Beerbower, John E <John.E.Beerbower@dea.gov>
**Cc:** Oblea, Erika K <Erika.K.Oblea@dea.gov>; Locher, David M <David.M.Locher@dea.gov>; Joseph R. LaMagna <jlamagna@HEALTH-LAW.COM>
**Subject:** Virtus Pharmaceuticals

John,

Thanks for taking the time to speak with us yesterday. Without rehashing our prior points, we have the following specific questions and requests with respect to Virtus Pharmaceuticals and the Woodfield suspensions:

1.  Virtus requests that DEA consider exercising its authority under 21 USC § 824(b) to omit two of its products, Levorphanol and Phendimetrazine, from the suspensions. As you know, and as this statutory section plainly permits, DEA has authority to limit suspensions to "the particular controlled substance or list 1 chemical respect to which grounds for . . . suspension exist."

    a.  To the extent that DEA considered exercising its authority to exclude Virtus's products from the suspensions but declined to do so, please explain the reasoning behind this decision.

    b.  To be clear, Virtus is not asking DEA to modify its suspensions with respect to Tramadol, which is a lower-priority product for Virtus.

2.  Alternatively, Virtus requests that DEA lift the suspension on Woodfield's distributor registration. This would facilitate shipment of the Virtus products.

3.  As another alternative, Virtus requests that DEA modify the suspension on Woodfield's distributor registration such that it is lifted for a brief period of time (such as two weeks), allowing for shipment of the Virtus products.

4.  Finally, Virtus understands that Woodfield is prepared to execute a Waiver of Rights and Interest ("Waiver") with respect to Levorphanol and Phendimetrazine, such that it would disclaim any rights of possession to those products (which, as you know, are owned by Virtus). The purpose of the Waiver would be to make clear that Woodfield no longer "possesses" or claims any right to these products under 21 § U.S.C. 824(f). If Woodfield provides this Waiver to DEA, will DEA release the Woodfield products? Of course, Virtus is prepared to have a DEA registrant take possession of these products upon release.

As we have explained and as I know you appreciate, time is of the essence for Virtus. We appreciate DEA's prompt consideration of these requests.

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**

470 Atlantic Avenue, 1201
Boston, MA 02210
DIRECT: +1 617.532.2704    MAIN: +1 617.532.2700    MOBILE: +1 617.688.2398
dschumacher@health-law.com | www.health-law.com

BOSTON | DENVER | LOS ANGELES | SAN DIEGO | SAN FRANCISCO | WASHINGTON, DC

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Virtus Pharmaceuticals, LLC

*Plaintiff*,

v.

Merrick Garland, *et al.*,

*Defendants*.

Case No. 1:21-cv-02308

## DECLARATION OF BRIAN S. BESSER

I, Brian S. Besser, under the penalty of perjury, declare and state as follows:

1.  I am currently employed as the Acting Assistant Administrator for the Drug Enforcement
    Administration's (DEA) Diversion Control Division. As Acting Assistant Administrator, I
    am responsible for overseeing the DEA program responsible for preventing, detecting, and
    investigating the diversion of pharmaceutical controlled substances and listed chemicals from
    legitimate channels while ensuring an adequate and uninterrupted supply of pharmaceutical
    controlled substances and listed chemicals to meet legitimate medical, commercial and
    scientific needs. I have been employed in that capacity since August 1, 2021. Prior to that, I
    served as the Deputy Assistant Administrator for Operations, Diversion Control Division. I
    have been employed as a Special Agent with DEA for approximately 24 years.

2.  I am submitting this Declaration in support of the Defendants' Memorandum of Law in
    Opposition to Plaintiff's Motion for a Temporary Restraining Order in the above-captioned
    matter. Based on my personal understanding and the information provided to me in my
    official capacity, I am familiar with the decision-making process employed by DEA in

making its determination to seal the controlled substances possessed by DEA registrants

Woodfield Distribution, LLC (Woodfield Distribution), and Woodfield Pharmaceutical, LLC

(Woodfield Pharma) (collectively, Woodfield), pursuant to the Order to Show Cause and

Immediate Suspension of Registration (OTSC/ISO) issued to Woodfield, dated August 4,

2021, and served on August 11, 2021 (attached hereto as **Exhibit A**), which is the subject of

this civil action.

3. The statements contained in this Declaration concerning the Administrator's decision are

known to me as a result of my own involvement in the decision-making process, or have

been provided to me by other DEA enforcement personnel.

### Woodfield Distribution, LLC and Woodfield Pharmaceutical, LLC

4. Woodfield Distribution is currently registered with DEA as a distributor in Schedules II

through V under DEA Certificate of Registration No. ███████ at 1113 Gillingham Lane,

Suite A, Sugar Land, Texas 77478. This Certificate of Registration expires by its own terms

on May 31, 2022.

5. Woodfield Distribution is also registered with DEA as an importer in Schedules III through

V under DEA Certificate of Registration No. ███████ at 1113 Gillingham Lane, Suite A,

Sugar Land, Texas 77478. This Certificate of Registration expires by its own terms on May

31, 2022.

6. Woodfield Distribution is licensed by the Texas Department of State Health Services as a

prescription drug distributor under license number 1001707. This state license expires by its

own terms on March 30, 2023.

2

7.  Woodfield Distribution is also registered with DEA as a distributor in Schedules II through V
    under DEA Certificate of Registration No. ███████ at 951 Clint Moore Road, Ste. A,
    Boca Raton, Florida 33487. Woodfield Distribution is also registered at the same location as
    an importer in Schedules III through V under DEA Certificate of Registration No.
    ███████ and as a reverse distributor in Schedules II through V under DEA Certificate of
    Registration No. ███████. These Certificates of Registration expire by their own terms
    on May 31, 2022.

8.  Woodfield Pharma is currently registered with DEA as a manufacturer in Schedules I
    through V, and a manufacturer of List I chemicals, under DEA Certificate of Registration
    No. ███████ at 10863 Rockley Road, Houston, Texas 77099. This Certificate of
    Registration expires by its own terms on May 31, 2022.

9.  Woodfield Pharma is licensed by the Texas Department of State Health Services as a
    prescription drug manufacturer under license number 1001461. This state license expires by
    its own terms on July 17, 2022.

### The Rampant Problem of Controlled Substance Diversion

10. Prescription drug abuse occurs in the United States at an alarming rate. Increases in
    prescription drug misuse over the last 15 years have resulted in increased emergency room
    visits, increased treatment admissions for prescription drug use disorders, and increased
    overdose deaths associated with prescription drugs.[1]

---

[1] *See* https://www.drugabuse.gov/publications/research-reports/misuse-prescription-drugs/summary

Virtus_DEA000192

11. The most frequently abused and diverted drugs are opioid pain relievers, such as levorphanol. In October 2017, the acting Secretary of the Department of Health and Human Services declared that the "opioid crisis" was a "public health emergency."[2]

12. Unintentional overdose deaths involving opioid pain relievers have more than quadrupled since 1999.[3] In 2019, there were over 14,000 deaths involving prescription opioids.[4]

13. Stimulants, such as phendimetrazine, also are commonly abused prescription drugs.[5] Abuse of prescription stimulants can lead to a raft of negative medical consequences, including addiction, psychosis, dangerously high body temperature, and cardiovascular failure or seizures.[6]

14. Registrants who maintain large quantities of controlled substances pose a particular risk of large scale diversion. As a result, these registrants must adhere to certain physical security measures, recordkeeping and reporting requirements, and customer due diligence obligations. When these registrants fail to comply with their obligations, they become a significant source of diversion.

15. Non-compliant registrants (including Woodfield Distribution), have caused, and continue to cause, millions of dosage units of opioids – such as levorphanol – and other controlled

---

[2] *See* https://www.hhs.gov/about/news/2017/10/26/hhs-acting-secretary-declares-public-health-emergency-address-national-opioid-crisis.html

[3] *See* https://www.drugabuse.gov/publications/research-reports/misuse-prescription-drugs/summary

[4] *See id.*

[5] *See* https://www.drugabuse.gov/publications/research-reports/misuse-prescription-drugs/what-classes-prescription-drugs-are-commonly-misused

[6] *See id.*

Virtus_DEA000193

substances – such as phendimetrazine – to be diverted, and they pose an imminent threat to the public health and safety.

## Regulatory Scheme

16. The Food and Drug Administration generally regulates pharmaceutical drugs. Congress, however, recognized the need for greater scrutiny over controlled substances due to their potential for abuse and danger to public health and safety. As such, it established a separate framework under the Controlled Substances Act (CSA), 21 U.S.C. §§ 801 *et seq.,* and implementing regulations, that creates a closed system of distribution for all controlled substances and listed chemicals. *See* H.R. Rep. No. 911444, 1970 U.S.C.C.A.N. at 4566.

17. Congress therefore established a comprehensive regulatory scheme in which controlled substances are placed in one of five "Schedules" depending on their potential for abuse, the extent to which they may lead to psychological or physical dependence, and whether they have a currently accepted medical use in treatment in the United States. *See* 21 U.S.C. § 812(b).

18. Controlled substances in "Schedule I" have a "high potential for abuse," "no currently accepted medical use in treatment in the United States," and a "lack of accepted safety for use under medical supervision." 21 U.S.C. § 812(b)(1)(A)-(C).

19. Controlled substances in Schedule II do have "a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions," but still have "a high potential for abuse." "Abuse of the drug or other substances may lead to severe psychological or physical dependence." 21 U.S.C. § 812(b)(2)(A)-(C).

20. Levorphanol is a Schedule II controlled substance. *See* 21 C.F.R. § 1308.12(c)(13).

5

21. Controlled substances in Schedule III also have "a currently accepted medical use in treatment in the United States," and "a potential for abuse" but "less than the drugs or other substances in schedules I and II." "Abuse of the drug or other substance[s]" in Schedule III "may lead to moderate or low physical dependence or high psychological dependence." 21 U.S.C. § 812(b)(3)(A)-(C).

22. Phendimetrazine is a Schedule III controlled substance. *See* 21 C.F.R. § 1308.13(b)(5).

23. The CSA gives DEA broad authority to prevent the diversion of pharmaceutical drugs for illicit use. *See* 21 U.S.C. §§ 824(d), 871(a); 21 C.F.R. §§ 1316.65(c), 1316.67; 28 C.F.R. § 0.104, Appendix to Subpart R, Sec. 7(a).[7]

24. Pursuant to that authority, the DEA Diversion Control Division regulates every link in the prescription-drug supply chain and is responsible for regulating all DEA registrants. Every person who manufactures, distributes, dispenses, imports, or exports any controlled substance, or who proposes to engage in the manufacture, distribution, dispensing, importation, or exportation of any controlled substance must obtain a registration with the DEA. *See* 21 C.F.R. § 1301.11. It is the responsibility of the Diversion Control Division to ensure that registrants adhere to all aspects of the CSA and its implementing regulations and to take action against them when they are out of compliance.

25. The CSA is specifically designed to impose on registrants a number of due diligence, reporting, recordkeeping, and physical security requirements to enable DEA to monitor and regulate the closed system of controlled substances and to prevent diversion of controlled

---

[7] The authority given to the Attorney General under the CSA has been delegated to the DEA Administrator. *See* 28 C.F.R. § 0.100. Certain authority has been further re-delegated. *See* 28 C.F.R. § 0.104, Appendix to Subpart R, Sec. 7(a).

Virtus_DEA000195

substances. Each DEA registrant bears a responsibility to assure the integrity of the closed system established by Congress in the CSA.

26. Specifically, with respect to distributors, registrants are required to, *inter alia*, "maintain . . . effective controls against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels . . . ." 21 U.S.C. § 823(b)(1) (detailing the obligation of distributors of controlled substances in Schedules I or II). *See also* 21 U.S.C. § 823(e)(1) (detailing the obligation of distributors of controlled substances in Schedules III, IV, or V, to include "maintenance of effective controls against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels").

27. As part of its obligation to "maintain . . . effective controls against diversion," a distributor registrant must, *inter alia*, maintain adequate physical security measures, accurately record inventory, timely and accurately report all thefts and significant losses, and design and operate a system to disclose suspicious orders of controlled substances. *See* 21 C.F.R. §§ 1301.72-73, 1301.74(b) & (c).

28. These regulations require a distributor to both adequately secure and document the controlled substances in its possession as well as to appropriately monitor where those controlled substances are distributed. Strict adherence to these requirements is critical in combatting diversion of controlled substances.

   a. With respect to physical security, DEA has concluded that "whether an applicant will provide proper physical security . . . is . . . critical in evaluating the

7

effectiveness of an applicant's controls against diversion." *Sujak Distributors*, 71

Fed. Reg. 50,102, 50,104 (2006).

b.   DEA has found that "[r]ecordkeeping is one of the CSA's principal tools for

preventing the diversion of controlled substances." *Wayne Pharmacy*, 85 Fed.

Reg. 63,579, 63,582 (2020). Such recordkeeping is one of the central features of

the CSA's regulatory regime because "a registrant's accurate and diligent

adherence to this obligation is absolutely essential to protect against the diversion

of controlled substances." *Superior Pharmacy I & Superior Pharmacy II*, 81 Fed.

Reg. 31,310, 31,337 (2016). Where a registrant "is abjectly unable to account for

'extraordinary quantities' of controlled substances, the Agency has held that 'it

has committed acts which render its registration inconsistent with the public

interest.'" *Top RX Pharmacy*, 78 Fed. Reg. 26,069, 26,084 (2013) (quoting *Ideal*

*Pharmacy Care, Inc. d/b/a Esplande Pharmacy*, 76 Fed. Reg. 51,415, 51,416

(2011)).

c.   DEA has determined that reporting thefts and significant losses is a critical part of

effective controls and procedures to guard against theft and diversion. *See Wayne*

*Pharmacy*, 85 Fed. Reg. at 63,582 (holding that a registrant's failure to promptly

notify DEA of the significant loss of controlled substances violated DEA

regulations requiring registrants to provide effective controls and procedures to

guard against theft and diversion of controlled substances).

d.   DEA has also emphasized to distributors the importance of suspicious order

monitoring systems. In a letter dated September 27, 2006, a letter DEA publicly

8

circulated to distributors (**attached hereto as Exhibit B**), DEA described distributors' responsibility to "be vigilant in deciding whether a prospective customer can be trusted to deliver controlled substances only for lawful purposes" as "critical" to maintaining the "closed system of [controlled] drug distribution." Ex. B, 1.

29. Because distributors handle such large volumes of controlled substances, they are the first major line of defense against the movement of legal pharmaceutical controlled substances and List I Chemicals from legitimate channels into the illicit market. It is incumbent on distributors to maintain effective controls to prevent diversion of controlled substances. Should a distributor deviate from these checks and balances, the closed system created by the CSA would collapse.

**Administrative Enforcement Actions**

30. When a distributor is not adhering to its legal obligations, the DEA has authority to revoke or suspend that distributor's registration. *See* 21 U.S.C. § 824(a)(4) (authorizing the suspension or revocation of a registration where the registrant "has committed such acts as would render his registration . . . inconsistent with the public interest").

31. The CSA sets forth five factors to be used to determine whether a distributor's registration would be consistent with the public interest as determined by the following five factors: (1) maintenance of effective control against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels; (2) compliance with applicable State and local law; (3) prior conviction record of applicant under Federal or State laws relating to the manufacture, distribution, or dispensing of such substances; (4) past

9

experience in the distribution of controlled substances; and (5) such other factors as may be consistent with the public health and safety. 21 U.S.C. § 823(b) & (e).

32. Ordinarily, DEA must hold a hearing prior to revocation or suspension of an entity's registration. But when the DEA has reason to believe that a registrant's continued operation during the pendency of administrative proceeding would pose "an imminent danger to the public health or safety," the DEA has discretion to suspend that party's registration immediately, prior to the administrative hearing. 21 U.S.C. § 824(d).

33. The DEA may find that a registrant's continued operation would pose an "imminent danger" where the DEA finds that "due to the failure of the registrant to maintain effective controls against diversion or otherwise comply with the obligations of a registrant . . . , there is a substantial likelihood of an immediate threat that death, serious bodily harm, or abuse of a controlled substance will occur in the absence of an immediate suspension of the registration." *Id.*

34. Where DEA immediately suspends a registrant's registration, it must serve the registrant with an Order to Show Cause which "shall contain a statement of [the DEA's] findings regarding the danger to public health and safety." 21 C.F.R. § 1309.44(a). A Section 824(d) suspension remains in effect until DEA issues a final order, unless the suspension is withdrawn by the Attorney General or dissolved by a court of competent jurisdiction. 21 U.S.C. § 824(d).

35. Once a registration is revoked or suspended (including pursuant to an immediate suspension), "all controlled substances or list I chemicals owned or possessed by the registrant pursuant to such registration . . . may, in the discretion of the [DEA Administrator], be placed under seal." 21 U.S.C. § 824(f). To effectuate this, DEA may either direct the registrant to place the

10

controlled substances under seal (at the registered location), or direct the registrant to deliver the controlled substances to DEA (to be removed for safekeeping). 21 C.F.R. § 1301.36(f).

36. In nearly every case in which DEA immediately suspends a registrant's registration, it places that registrant's controlled substances under seal, and directs the registrant to deliver the controlled substances at issue to DEA. Those controlled substances are then removed for safekeeping. A number of prudential considerations drive this practice, including, but not limited to, the following:

   a. DEA's authority for immediately suspending any registrant's registration is based on DEA's determination that the registrant's continued registration would pose an imminent danger to the public health or safety. Accordingly, leaving those controlled substances unsealed will almost always itself pose a danger to the public health or safety.

   b. Where the registrant's ability to handle controlled substances has been suspended, that registrant is no longer authorized to possess or handle controlled substances. Leaving the controlled substances in the possession of a suspended registrant is contrary to the closed system of distribution (and would potentially expose the suspended registrant to additional liability).

   c. Sealing the controlled substances while leaving them at the registered location imposes administrative difficulties on DEA (*e.g.*, ensuring that those controlled substances remain sealed), as well as on the registrant, who will be required to maintain those controlled substances without the ability to dispose of them until

11

the administrative proceedings terminate and without the ability to lawfully handle them while the proceedings are ongoing.

d.   Moreover, leaving the controlled substances in the hands of such a registrant (sealed or otherwise), rather than having that registrant deliver them to DEA, will typically itself pose a danger to the public health or safety.

37. Once those controlled substances have been placed under seal, "[n]o disposition may be made of any controlled substances or list I chemicals under seal until the time for taking an appeal has elapsed or until all appeals have been concluded." 21 U.S.C. 824(f). The only exception to that rule is that "a court, upon application therefor, may at any time order the sale of perishable controlled substances or list I chemicals." *Id.*

### DEA's Sealing of Controlled Substances Possessed by Woodfield

38. For reasons set forth in part in the OTSC/ISO issued to Woodfield, DEA immediately suspended certain of Woodfield's Certificates of Registration, Nos. █████████

██████████████████. In addition to suspending those Certificates of Registration, the Administrator exercised her discretion and authorized the DEA personnel who served the OTSC/ISO to "place under seal or remove for safekeeping all controlled substances that Woodfield possesses pursuant to the [suspended] registrations."

39. Upon serving the OTSC/ISO on Woodfield, DEA sealed all of the controlled substances in Woodfield's possession pursuant to the above-noted Certificates of Registration by directing Woodfield to deliver those controlled substances to DEA and removing those controlled substances for safekeeping.

12

40. In this case, declining to place the controlled substances possessed by Woodfield under seal or directing Woodfield to seal the controlled substances in place at its facilities would have been particularly inappropriate. As set forth in the attached OTSC/ISO, DEA found, among other things, that Woodfield persistently failed to enact adequate physical security measures to ensure that controlled substances in Woodfield's possession were not being diverted into illegitimate channels. Leaving the controlled substances with Woodfield would ignore these concerns.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

BRIAN BESSER
2021.09.03
15:22:59 -04'00'

_____

Brian S. Besser

13

Virtus_DEA000202

# EXHIBIT A

Virtus_DEA000203



**U.S. Department of Justice**
Drug Enforcement Administration

---

*Office of the Administrator*                    *Springfield, VA 22152*

08/04/2021

**IN THE MATTER OF**

Woodfield Distribution, LLC
1113 Gillingham Lane, Suite A
Sugar Land, Texas 77478

Woodfield Pharmaceutical, LLC
10863 Rockley Road
Houston, Texas 77099

DEA Certificates of Registration:

<div style="background:black"> </div>

## ORDER TO SHOW CAUSE AND
## IMMEDIATE SUSPENSION OF REGISTRATION

**PURSUANT** to Sections 303 and 304 of the Controlled Substances Act, Title 21, United States Code, Sections 823 and 824,

**NOTICE** is hereby given to inform Woodfield Distribution, LLC (Woodfield Distribution) and Woodfield Pharmaceutical, LLC (Woodfield Pharma) (collectively, Woodfield) of the immediate suspension of Drug Enforcement Administration (DEA) Certificates of Registration (COR) Nos. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ pursuant to 21 U.S.C § 824(d), because Woodfield's continued registration constitutes "an imminent danger to the public health or safety." Notice is also given to afford Woodfield an opportunity to show cause before DEA at the DEA Hearing Facility located at 1550 Crystal Drive, Suite 901, Arlington, Virginia 22202, on October 5, 2021, or on such a subsequent date designated by the Administrative Law Judge (if Woodfield requests such a hearing), as to why DEA should not revoke Woodfield's registrations pursuant to 21 U.S.C. § 824(a)(4), deny any pending applications for renewal or modification of such registrations, and deny any applications for additional DEA registrations, because Woodfield's continued registration is inconsistent with the public interest, as that term is defined in 21 U.S.C. § 823(a), (b), (d), & (e).

1

As detailed below, this order states DEA's basis for this Order to Show Cause and Immediate Suspension of Registration, including a ***non-exhaustive summary*** of facts and law at issue, as well as citations to laws and regulations that Woodfield has violated (*see* 21 C.F.R. §§ 1301.36(e) and 1301.37(c), which DEA construes *in pari materia*). In order to preserve Woodfield's rights in this proceeding, Woodfield may appear in these revocation proceedings by filing a notice of appearance or request for hearing in the manner prescribed by regulations within 30 days from the receipt of this Order.

1. Woodfield Distribution and Woodfield Pharma are related entities and share common ownership. Woodfield Distribution holds itself out as providing "integrated third-party logistics pharmaceutical services and value-added solutions." Woodfield Distribution operates as an importer and distributor of controlled substances. It imports controlled substances from foreign manufacturers or obtains them from domestic manufacturers and then distributes them to customers across the United States. Woodfield Pharma is a "pharmaceutical contract manufacturer" specializing in oral solutions, liquid solutions, suspensions, and semi-solids, including controlled substances.

## **WOODFIELD DISTRIBUTION, LLC**

2. Woodfield Distribution is currently registered with DEA as a distributor in Schedules II through V under DEA Certificate of Registration No. ███████ at 1113 Gillingham Lane, Suite A, Sugar Land, Texas 77478. This Certificate of Registration expires by its own terms on May 31, 2022.

3. Woodfield Distribution is also registered with DEA as an importer in Schedules III through V under DEA Certificate of Registration No. ███████ at 1113 Gillingham Lane, Suite A, Sugar Land, Texas 77478. This Certificate of Registration expires by its own terms on May 31, 2022.

4. Woodfield Distribution is licensed by the Texas Department of State Health Services as a prescription drug distributor under license number 1001707. Woodfield Distribution's state license expires by its own terms on March 30, 2023.

### FAILURE TO MAINTAIN EFFECTIVE CONTROLS AGAINST DIVERSION

5. Controlled substance distributors have an affirmative obligation to "provide effective controls and procedures to guard against theft and diversion of controlled substances." 21 C.F.R. § 1301.71(a). Failure to maintain such effective controls can render a distributor's continued registration "inconsistent with the public interest" as defined in the Controlled Substances Act (CSA). *See* 21 U.S.C. § 823(b)(1) (in order for its registration to be in the public interest, a drug distributor is required to, *inter alia*, "maintain[] effective control[s] against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels");[1]

---

[1] Woodfield is registered with the DEA as a distributor in Schedules II through V. The "public interest" considerations for distributors in Schedules I and II are set forth at 21 U.S.C. § 823(b). The "public interest"

Virtus_DEA000205

see also *Masters Pharmaceuticals, Inc.*, 80 Fed. Reg. 55,418, 55,473 (2015), *pet. for rev. denied Masters Pharmaceuticals, Inc. v. DEA*, 861 F.3d 206 (D.C. Cir. 2017); *Southwood Pharmaceuticals, Inc.*, 72 Fed. Reg. 36,487, 36,498 (2007).

6. The regulations set forth "security requirements" to be used "[i]n order to determine whether a registrant has provided effective controls against diversion." 21 C.F.R. § 1301.71(a). These security requirements include, but are not limited to:

   a. physical security requirements, *id.* § 1301.72-73;

   b. requirement to detect and report "suspicious orders of controlled substances," *id.* § 1301.74(b); and

   c. requirement to report "any theft or significant loss of any controlled substances," *id.* § 1301.74(c).

7. As discussed below, DEA's investigation, including three on-site visits in 2020, revealed that Woodfield Distribution manifestly failed to comply with its obligation to maintain effective controls against the diversion of controlled substances. Woodfield Distribution's violations include the persistent and comprehensive failure to maintain complete and accurate records, report thefts or significant losses when appropriate, detect and report suspicious orders, and comply with the physical security requirements imposed on registrants. As detailed below, many of these violations continued through as recently as at least May 2021.

**Violations Regarding Missing Controlled Substances**

Failure to Maintain Accurate Continuing Records

8. "Recordkeeping is one of the CSA's principal tools for preventing the diversion of controlled substances." *Wayne Pharmacy*, 85 Fed. Reg. 63,579, 63,582 (2020). Recordkeeping is one of the central features of the CSA's regulatory regime because "a registrant's accurate and diligent adherence to this obligation is absolutely essential to protect against the diversion of controlled substances." *Superior Pharmacy I & Superior Pharmacy II*, 81 Fed. Reg. 31,310, 31,337 (2016).

9. Where a registrant "is abjectly unable to account for 'extraordinary quantities' of controlled substances, the Agency has held that 'it has committed acts which render its registration inconsistent with the public interest.'" *Top RX Pharmacy*, 78 Fed. Reg. 26,069, 26,084 (2013) (*quoting Ideal Pharmacy Care, Inc. d/b/a Esplande Pharmacy*, 76 Fed. Reg. 51,415, 51,416 (2011)).

---

considerations for distributors in Schedules III through V are set forth at 21 U.S.C. § 823(e). Insofar as these statutory provisions are materially identical, this Order cites Section 823(b) for the public interest considerations for controlled substance distributors. However, these requirements apply equally to Woodfield's authorization to distribute controlled substances in Schedules III through V.

3

Virtus_DEA000206

10. As a distributor, Woodfield Distribution must, *inter alia*, "maintain, on a current basis, a complete and accurate record of each substance manufactured, imported, received, sold, delivered, exported, or otherwise disposed of by him/her, and each inner liner, sealed inner liner, and unused and returned mail-back package[.]" 21 C.F.R. § 1304.21(a); *see also* 21 C.F.R. § 1304.22(b) (specific recordkeeping requirements for distributors).

11. In March 2020, DEA investigators conducted an audit of Woodfield Distribution's controlled substances records by taking an inventory of the controlled substances present at Woodfield Distribution's registered location and comparing that inventory to the records maintained and provided by Woodfield Distribution. DEA's audit found that Woodfield Distribution did not account for significant quantities of controlled substances. This violated 21 C.F.R. §§ 1304.21(a) and 1304.22(b). *See Bill Lloyd Drug*, 64 Fed. Reg. 1,823, 1,824 (1999) ("The shortages and overages revealed by the accountability audit show that Respondent does not keep complete and accurate records of its controlled substance handling as required by 21 U.S.C. 827 and 21 CFR 1304.21."). Specifically, Woodfield Distribution was unable to account for:

    a.   67,197,000 dosage units of tramadol 50 mg, a Schedule IV controlled substance;

    b.   5,108,000 dosage units of phendimetrazine 35mg, a Schedule III controlled substance;

    c.   378,000 dosage units of phendimetrazine 105mg;

    d.   285,600 dosage units of levorphanol tartrate 2mg, a Schedule II controlled substance;

    e.   144,000 dosage units of phenobarbital 97.2mg, a Schedule IV controlled substance; and

    f.   88,496 bottles of guaifenesin with codeine 473ml, a Schedule V controlled substance.

12. Woodfield Distribution's failure to account for tens of millions of dosage units of controlled substances not only violated its obligation to maintain accurate records, but also constituted a significant failure to comply with Woodfield Distribution's obligation to maintain effective controls against the diversion of controlled substances into illicit channels. *See, e.g., Superior Pharmacy*, 81 Fed. Reg. at 31,337.

Failure to Report Theft or Significant Loss of Controlled Substances

13. Registrants "must notify the [DEA] . . . , in writing, of any theft or significant loss of any controlled substances within one business day of discovery of the theft or loss. . . . The registrant must also complete, and submit to the Field Division Office in his or her area, DEA Form 106 regarding the theft or loss." 21 C.F.R. § 1301.74(c).

4

14. "Thefts and significant losses must be reported whether or not the controlled substances are subsequently recovered or the responsible parties are identified and action taken against them." *Id.*

15. On or about January 13, 2019, a burglary occurred at Woodfield Distribution's registered location. At least 217,200 dosage units of alprazolam, a Schedule IV controlled substance, were stolen. Woodfield Distribution never filed a theft or loss report with DEA, in violation of 21 C.F.R. § 1307.74(c), despite being informed subsequently by DEA of Woodfield Distribution's responsibility to do so.

16. DEA has identified at least 45 shipments that Woodfield Distribution distributed between January 1, 2019, and March 9, 2020, in which shipments of controlled substances, *viz.*, tramadol, and guaifenesin with codeine, were unaccounted for or missing.[2] This constituted a significant loss of controlled substances, as defined under 21 C.F.R § 1301.74(c). However, for that time period, Woodfield Distribution filed only one theft or loss report. Woodfield Distribution therefore failed to report at least 44 shipments with missing controlled substances totaling hundreds of thousands of dosage units.

17. During an inspection of Woodfield Distribution's facilities on March 9, 2020, DEA investigators discussed with Woodfield Distribution its obligation to file theft or loss reports under the regulations. Subsequently, between March 10, 2020, and March 18, 2021, Woodfield Distribution filed 26 theft or loss reports. However, for that same period, DEA identified at least 58 shipments where controlled substances, *viz.*, tramadol, levorphanol, and guaifenesin with codeine, distributed by Woodfield Distribution were unaccounted for or missing. Woodfield Distribution therefore failed to report at least 32 shipments missing tens of thousands of dosage units of controlled substances in total.

18. By failing to report the theft and/or loss of hundreds of thousands of dosage units of controlled substances in an approximately two-year period, Woodfield Distribution violated its reporting obligations under 21 C.F.R. § 1307.74(c). It also failed to comply with its obligation to maintain effective controls against the diversion of controlled substances into illicit channels. *Cf. Wayne Pharmacy*, 85 Fed. Reg. at 63,582 ("Registrant's failure to notify DEA of the significant loss of controlled substances within one business day of discovering the loss was a violation of 21 CFR 1301.76(b) and a violation of 21 CFR 1301.71, which requires all registrants to provide 'effective controls and procedures to guard against theft and diversion of controlled substances' as set forth in 1301.72-76.").

---

[2] In a distribution transaction, the distributor "is responsible for reporting all in-transit losses of controlled substances by their agent or the common or contract carrier selected [by them], within one business day of discovery of such theft or loss." 21 C.F.R. § 1301.74(c).

5

Virtus_DEA000208

**Failure to Operate an Effective System to Identify and Report "Suspicious Orders"**

19. Registrants "shall design and operate a system to identify suspicious orders for the registrant" and "upon discovering a suspicious order or series of orders, notify" the DEA. 21 U.S.C. § 832(a); *see also* 21 C.F.R. § 1301.74(b) (registrants "shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Field Division Office of the Administration in his area of suspicious orders when discovered by the registrant.").

20. "Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 21 C.F.R. § 1301.74(b); *see also* 21 U.S.C. § 802(57) (the term "suspicious order" may include, but is not limited to "(A) an order of a controlled substance of unusual size; (B) an order of a controlled substance deviating substantially from a normal pattern; and (C) orders of controlled substances of unusual frequency").

21. The enumerated criteria are disjunctive and not exhaustive and "other indicia may also raise suspicions about an order for controlled substances." *Masters Pharmaceuticals, Inc. v. DEA*, 861 F.3d 206, 221 (D.C. Cir. 2017) (citing *Southwood Pharmaceuticals*, 72 Fed. Reg. 36,487, 36,501-02 (2007)). For example, the customer's "business model, dispensing patterns, or other characteristics might make an order suspicious, despite the particular order not being of unusual size, pattern or frequency." *Masters Pharmaceuticals*, 80 Fed. Reg. 55,418, 55,474 (2015).

22. The regulation imposes an affirmative obligation on a registrant to monitor for, and detect, any information that "raises a substantial question as to the legitimacy of a customer's [business] practices." *Masters Pharmaceuticals*, 80 Fed. Reg. at 55,478. The regulation is "violated where the registrant has obtained information that an order is suspicious but then chooses to ignore that information and fails to report the order." *Id.*

23. In addition, DEA has recognized that a registrant must properly document its suspicious order monitoring procedures, any indicia of suspiciousness that it is aware of, and any steps taken to address or resolve indicia of suspiciousness. "Even if the Agency's regulations do not require a distributor to document the reason provided by a customer to justify a suspicious order [under 21 C.F.R. § 1301.74(b)], documenting that reason is still an essential part of maintaining effective controls against diversion because subsequent events may provide information which show that the reason was false." *Masters Pharmaceuticals*, 80 Fed. Reg. at 55,428 n. 21.

24. Similarly, "where there is an absence of documentation that Respondent performed the respective act, that absence is substantial evidence that Respondent did not perform the act." *Id.* at 55,428. Failing to document due diligence investigations is thus a violation of the general obligation to maintain effective controls against diversion.

Virtus_DEA000209

25. Between at least April 7, 2018, and the present, Woodfield Distribution has not reported any suspicious orders to DEA.

26. On April 7, 2020, Woodfield Distribution provided DEA with a copy of its Suspicious Order Monitoring System Standard Operating Procedure (SOP) effective February 17, 2020. In the SOP, Woodfield Distribution recognized its obligation to "maintain an effective due diligence program to guard against the diversion" of controlled substances, "to detect suspicious orders," and to "ensure compliance with both regulatory and contractual requirements."

27. The SOP provided, in relevant part, that orders for controlled substances "must be authenticated through W[oodfield ]D[istribution]'s SOMS in Datex and flagged if the order does not comply."[3] Specifically, the SOP required Woodfield Distribution to monitor for orders that were: (1) "[i]dentical to another order placed within a seven (7) day time period;" (2) "[i]n excess of two (2) times the monthly average per Class or Customer average;" or (3) that represent a "drastic shift in order patterns and/or ordering time periods." According to the SOP, orders that meet these criteria will "trigger an investigation" and a report to DEA "within one (1) business day of discovery."[4]

28. On or about May 18, 2021, DEA served an administrative subpoena on Woodfield Distribution requesting "any and all documents pertaining to the design and operation of the controlled substance suspicious orders monitoring and reporting for Woodfield Distribution."

29. The administrative subpoena included a request for records regarding "any systems designed and utilized by [Woodfield Distribution] to identify and report suspicious orders of controlled substance" and any records regarding any "due diligence or internal investigations conducted on potentially suspicious orders made for controlled substances, including—but not limited to—documentation thereof and/or communications concerning the procedures utilized during and the results of any such investigations."

30. On or about May 20, 2021, Woodfield Distribution's president and owner Adam Runsdorf responded, "[a]t this time, there are no records of Suspicious Order Reports filed by Woodfield Distribution, LLC referencing the company's Sugar Land, TX facility location for controlled substances." The response also offered to provide additional information regarding the Datex system.

---

[3] Datex Corporation is a third-party software company that provides warehouse management software to its customers, including Woodfield Distribution.

[4] Woodfield Distribution also provided DEA investigators with an earlier version of the SOP, effective August 10, 2018, which was materially similar to the February 2020 SOP. Woodfield later provided a revised SOP, dated March 25, 2020. This version was materially identical to the February 2020 SOP.

Virtus_DEA000210

31. On May 26, 2021, Woodfield Distribution's president again confirmed to DEA that "[a]t this time, there have not been any Suspicious Orders identified nor reporting filed by Woodfield Distribution, LLC referencing the company's Sugar Land, TX facility location for controlled substances." The May 26, 2021 response also represented that the Datex system had the "ability to customize and develop certain audit trail functionality and reporting for Suspicious Order Monitoring."[5]

32. Woodfield Distribution never produced any documents or records regarding any due diligence or investigations conducted with respect to any customers or orders of controlled substances. Indeed, Woodfield Distribution has continually maintained that its system has not flagged any potentially suspicious orders for review.

33. On or about May 25, 2021, DEA served an administrative subpoena on Datex, seeking information regarding Datex products and/or licenses used by Woodfield Distribution and any Datex products related to suspicious order monitoring, including any implementation of Datex products in connection with Woodfield Distribution's suspicious order monitoring system.

34. Based on a review of the materials produced by Datex, and conversations between Datex personnel and DEA investigators, DEA determined that Datex does not provide suspicious order monitoring products. DEA also determined that Woodfield Distribution has not customized the Datex software in a manner that would allow Woodfield Distribution to undertake the type of review outlined in the various SOPs.

35. In addition, DEA conducted an analysis of certain orders for controlled substances distributed by Woodfield Distribution between January 18, 2019, and April 13, 2021. DEA reviewed information regarding approximately 13,150 orders of controlled substances distributed by Woodfield Distribution during that period.

36. DEA's analysis replicated the enumerated indicia of suspiciousness set forth in Woodfield Distribution's SOP.[6] Specifically, DEA's analysis identified: (1) orders that were identical to another order for the same product distributed to the same customer within the prior seven days, and (2) orders that exceeded two times the prior month's average of orders for that product by that customer.

---

[5] The May 26, 2021 response also included a revised SOP, dated May 25, 2021. The May 25, 2021 SOP provides simply that Woodfield will monitor for suspicious orders, to include "order of unusual size, orders deviating substantially from a normal pattern and orders of unusual frequency" and that "[o]rders shall be restricted if there is a shift in order patterns and/or ordering time periods." As an "[e]xample," the May 25, 2021 SOP indicated that Woodfield Distribution will look for orders "[i]n excess of three (3) times above historical monthly average per volume and frequency of individual controlled drug product and/or customer or client."

[6] In conducting this analysis, DEA does not concede that the system described in the SOP would have been compliant with 21 C.F.R. § 1301.74(b), if operated. Nor does DEA concede that the criteria set forth in the SOP are indicia of suspiciousness. Instead, the purpose of DEA's analysis was to determine whether Woodfield Distribution's failure to flag any orders was consistent with its own purported protocols. *Cf. Masters Pharmaceuticals*, 80 Fed. Reg. at 55,528 ("[T]he fact that such documentation is not required by DEA regulations or any established industry standard . . . is beside the point given that Respondent represented to the Agency that it would maintain such documentation.").

8

Virtus_DEA000211

37. DEA's analysis identified 995 instances where Woodfield Distribution filled an order for a controlled substance for a customer who had placed an order for the same quantity of the same product in the previous seven days.

38. DEA's analysis identified 1,190 instances where Woodfield filled an order for a controlled substance that exceeded two times the monthly average of orders for that product distributed to that customer. On 140 of those occasions, the order for controlled substances filled by Woodfield Distribution exceeded *five times* the monthly average of orders for that product purchased by that customer.

39. The failure of Woodfield Distribution to "flag" thousands of orders of controlled substances that met its internal criteria for "suspiciousness"—much less to investigate these orders or document the resolution of such investigation—represents a failure by Woodfield Distribution to comply with its own policies and procedures for verifying the legitimacy of orders for controlled substances. Woodfield Distribution's broader failure to design and operate a system to detect and report suspicious orders, constitutes an ongoing violation of 21 C.F.R. § 1301.74(b).

**Failure to Substantially Comply with the Physical Security Requirements**

40. Registrants must substantially comply with the physical security requirements set forth in 21 C.F.R. §§ 1301.71-77. "Substantial compliance with the [physical security] standards . . . may be deemed sufficient by the Administrator after evaluation of the overall security system and needs of the applicant or registrant." 21 C.F.R. § 1301.71(b).

41. In evaluating the overall security system of a registrant or applicant, the Administrator may consider any or all of fifteen specifically enumerated factors "as he may deem relevant to the need for strict compliance with security requirements[.]" *Id.*

42. DEA investigators conducted inspections of Woodfield Distribution's facilities on March 9-11, 2020; August 21, 2020; and November 10, 2020. During these inspections, DEA investigators observed numerous violations of the physical security standards set forth in the regulations. These violations included, but were not limited to, the following:

   a. Unsecured Controlled Substances: Schedule III through V controlled substances must be properly stored in a secure storage area. *See* 21 C.F.R. 1301.72(b). Woodfield Distribution routinely stored large quantities of such controlled substances in non-secure areas of its warehouse. Specifically, DEA investigators observed at least the following controlled substances stored in unsecured aisles:

      i. On March 9-11, 2020, pallets of tramadol and acetaminophen-caffeine-dihydrocodeine bitartrate combination products, Schedule III controlled substances.

9

ii. On August 21, 2020, more than 45 pallets of controlled substances consisting of either guaifenesin with codeine, phendimetrazine, phenobarbital, or tramadol. Woodfield Distribution falsely recorded these controlled substances as being stored in its controlled substance cage. In addition, many of the unsecured boxes of controlled substances on these pallets were torn open, either awaiting destruction or being used to fill orders.

iii. On November 10, 2020, ten pallets of controlled substances, consisting of either phenobarbital or phendimetrazine. Woodfield Distribution falsely recorded many of these controlled substances as being stored in its controlled substance cage. In addition, many of the unsecured boxes of controlled substances on these pallets were torn open, either awaiting destruction or being used to fill orders.

iv. In March 2020 and August 2020, when DEA investigators inquired about these unsecured controlled substances, Woodfield Distribution management responded that the controlled substance cage was too full. In November 2020, Woodfield Distribution management told DEA investigators it had moved certain controlled substances to make room to fill orders. Management also indicated they had been unaware that other controlled substances were not being stored inside the cage.

b. <u>Inadequate Alarm System:</u> Woodfield Distribution's controlled substance cage must be equipped with an alarm system as sort forth in 21 C.F.R. § 1301.72(b)(4)(v). Woodfield Distribution employees routinely bypassed the alarm systems in the controlled substance cage.

i. According to records maintained by Woodfield Distribution's security monitoring company, between March 12, 2020, and September 21, 2020, Woodfield Distribution employees bypassed alarms from four zones covering the controlled substance cage (including the cage door) at least 124 times.

ii Woodfield Distribution employees continued to bypass these alarm zones even though DEA investigators warned against this practice during both the March 2020 and August 2020 inspections. Despite these repeated warnings, these bypasses continued until at least September 21, 2020.

c. <u>Inadequate Locking of Controlled Substance Cage:</u> Woodfield Distribution's controlled substance cage must be equipped with "a door which is kept closed and locked at all times when not in use and when in use is kept under direct observation of a responsible employee or agent of the registrant is permitted in lieu of a self-closing, self-locking door." 21 C.F.R. § 1301.72(b)(4)(iv) & (b)(3)(ii). In addition, "Locking devices for such doors shall be either of the multiple-position combination or key lock type and . . . [i]n the case of key locks, shall require key control which limits access to a limited number of employees[.]" *Id.*

10

    i.  During the March 9, 2020 inspection, the door was broken and could not be locked.

    ii.  During the subsequent inspections, a padlock had been placed on the door; however, the key to the padlock was kept on a table next to the door in an unsupervised, unsecured box in plain view.

d.  <u>Other Security Issues</u>: In addition to the above violations, DEA investigators discovered the following additional issues related to Woodfield Distribution's controlled substance cage during the inspections in March, August, and November 2020:

    i.  Between October 6, 2020, and October 30, 2020, the security cameras in the warehouse, including those covering the controlled substance cage, were inoperable. During this time, Woodfield Distribution received at least 18,000 bottles of Schedule II through V controlled substances.

    ii.  On March 9, 2020, and November 10, 2020, DEA investigators observed non-controlled substances being stored in the controlled substance cage, without written approval from DEA, in violation of 21 C.F.R. § 1301.72(b)(8)(ii).

### WOODFIELD PHARMACEUTICAL, LLC

43.  Woodfield Pharma is currently registered with the DEA as a manufacturer in Schedules I through V, and a manufacturer of List 1 chemicals, under DEA Certificate of Registration No. ▮▮▮▮▮▮▮ at 10863 Rockley Road, Houston, Texas 77099. This Certificate of Registration expires by its own terms on May 31, 2022.

44.  Woodfield Pharma is licensed by the Texas Department of State Health Services as a prescription drug manufacturer under license number 1001461. Woodfield Pharma's state license expires by its own terms on July 17, 2022.

45.  As discussed below, DEA's investigation revealed that significant quantities of controlled substances were removed from Woodfield Pharma without proper documentation or accounting and that Woodfield Pharma had connections to a suspected drug trafficking organization.

### FAILURE TO MAINTAIN EFFECTIVE CONTROLS AGAINST DIVERSION

#### Violations Regarding Wrongfully Removed Controlled Substances

46.  "Recordkeeping is one of the CSA's principal tools for preventing the diversion of controlled substances." *Wayne Pharmacy*, 85 Fed. Reg. at 63,582. Recordkeeping is one of the central features of the CSA's regulatory regime because "a registrant's accurate and diligent adherence to this obligation is absolutely essential to protect against the diversion of controlled substances." *Superior Pharmacy*, 81 Fed. Reg. at 31,337.

11

47. Where a registrant "is abjectly unable to account for extraordinary quantities of controlled substances, the Agency has held that it has committed acts which render its registration inconsistent with the public interest." *Top RX Pharmacy*, 78 Fed. Reg. at 26,084 (quoting *Ideal Pharmacy Care*, 76 Fed. Reg. at 51,416). Further, DEA has previously held that "willingness to falsify records . . . makes questionable [a registrant's] commitment to the DEA statutory and regulatory requirements designed to protect the public from the diversion of controlled substances." *Ace Wholesale & Trading Co.*, 67 Fed. Reg. 12,574, 12,576 (2002).

48. As a manufacturer, Woodfield Pharma must, *inter alia*, "maintain, on a current basis, a complete and accurate record of each substance manufactured, imported, received, sold, delivered, exported, or otherwise disposed of by him/her, and each inner liner, sealed inner liner, and unused and returned mail-back package[.]" 21 C.F.R. § 1304.21(a); *see also* 21 C.F.R. § 1304.22(a) (specific recordkeeping requirements for manufacturers).

49. Additionally, "employees who possess, sell, use or divert controlled substances . . . shall . . . immediately become the subject of independent action regarding their continued employment. The employer will assess the seriousness of the employee's violation, the position of responsibility held by the employee, past record of employment, etc., in determining whether to suspend, transfer, terminate or take other action against the employee." 21 C.F.R. § 1301.92.

50. On or about October 1, 2019, two Woodfield Pharma employees entered the controlled substances vault on the premises of Woodfield Pharma after business hours. These two employees removed at least codeine, a Schedule II controlled substance, from the vault, and left the premises with controlled substances they had removed. These employees failed to document that they removed these controlled substances from the vault. Instead, they falsely documented that they had removed only a "Data Logger."

51. Notwithstanding the fact that this removal of controlled substances was recorded by Woodfield Pharma's video security system, and that Woodfield Pharma discovered the falsification of records, to DEA's knowledge, the two employees were never subjected to meaningful disciplinary action regarding this event and remain employed at Woodfield Pharma.

## CONNECTIONS TO DRUG TRAFFICKING ORGANIZATION

52. In determining whether a manufacturer's registration is consistent with the public interest, DEA is to consider "such other factors as may be relevant to and consistent with the public health and safety." 21 U.S.C. § 823(a)(6) & (d)(6).

53. On February 22, 2021, DEA received a tip from a confidential source (CS) that Woodfield Pharma planned to deliver hundreds of gallons of suspected promethazine, a non-controlled substance, to members of a suspected drug trafficking organization (DTO). The CS had observed Woodfield Pharma employees loading a truck with 55-

12

gallon drums. DEA investigators then followed the truck to a warehouse leased by a member of the suspected DTO, and observed members of the suspected DTO unloading the same 55-gallon drums identified by the CS into the warehouse.

54. On February 23, 2021, DEA executed a search warrant at the warehouse. DEA discovered suspected promethazine as well as drug trafficking paraphernalia, including, but not limited to, 36 55-gallon drums; 291 bottles containing suspected promethazine; approximately 45,000 counterfeit labels for either promethazine or promethazine with codeine, a Schedule V controlled substance; a volumetric filling machine; capping machines; and a pill press.

55. On March 1, 2021, DEA seized a Federal Express package containing $7,000 in U.S. currency, provided by a member of the suspected DTO and addressed to Adam Runsdorf—the president and sole owner of both Woodfield Distribution and Woodfield Pharma.

56. Woodfield Pharma's paid participation in illicit activity by a suspected DTO demonstrates that Woodfield Pharma's continued registration is not consistent with the public health and safety. *See Wonderyears, Inc.*, 74 Fed. Reg. 457, 458 n.2 (2009) (noting that respondent's "violations of federal and state laws in distributing and importing" a non-controlled substance "are relevant in assessing whether it would comply with the Controlled Substances Act.").

## COMMON OWNERSHIP OF THE WOODFIELD ENTITIES

57. "[W]here misconduct has previously been proved with respect to the owners, officers, or key employees of a [registrant]," DEA can revoke the registration of a second, related, registrant, "where the Government shows that such individuals have influence over the management or control of the second [entity]." *Superior Pharmacy*, 81 Fed. Reg. at 31,341 n.71.

58. "Further, the Agency may revoke a registration, even if there is no misconduct that can be attributed to the registration, if the Agency finds that the registrant committed egregious misconduct under a second registration." *Morning Star Pharmacy & Medical Supply 1*, 85 Fed. Reg. 51,045, 51,062 (2020).

59. Woodfield Distribution and Woodfield Pharma are commonly owned. Specifically, Adam Runsdorf is the president and sole owner of both Woodfield Distribution and Woodfield Pharma. As such, Mr. Runsdorf exercises significant influence and control over both Woodfield Distribution and Woodfield Pharma.

60. Given the fact that the same individual exercises management and control over both entities, the misconduct of either entity is relevant to the determination of whether the other can be entrusted with a DEA registration. *See Morning Star*, 85 Fed. Reg. at 51,062 ("Due to the commonality of ownership, management, and key employees between Respondent Pharmacy and Cedar Hill, any misconduct related to controlled

13

substances at Cedar Hill is relevant to the determination of whether Respondent Pharmacy can be entrusted with registration.").

## IMMINENT DANGER TO THE PUBLIC HEALTH AND SAFETY

61. Due to Woodfield's manifest failure to maintain effective controls against the diversion of controlled substances, including the persistent and comprehensive failure to maintain complete and accurate records, to report thefts or significant losses when appropriate, to detect and report suspicious orders, and to comply with the physical security requirements imposed on registrants, Woodfield's continued operation poses an "imminent danger to the public health or safety" within the meaning of 21 U.S.C. 824(d).

IN view of the foregoing, and pursuant to 21 U.S.C. §§ 823(b) and 824(a)(4), it is my preliminary finding that Woodfield's continued registration is inconsistent with the public interest. It is my preliminary finding that Woodfield has failed to maintain effective controls against the diversion of controlled substances, including the persistent and comprehensive failure to maintain complete and accurate records, to detect and report suspicious orders, and to comply with the physical security requirements imposed on registrants. It is also my preliminary finding, significantly in light of the rampant and deadly problem of prescription controlled substance abuse, that Woodfield's continued registration during the pendency of these proceedings would constitute an imminent danger to the public health or safety because of the substantial likelihood that Woodfield's failure to maintain effective controls against diversion will allow the diversion of controlled substances unless Woodfield's DEA CORs are suspended. Under the facts and circumstances described herein, it is my conclusion that Woodfield's continued registration while these proceedings are pending constitutes an imminent danger to the public health and safety. *See* 21 U.S.C. § 824(d). Accordingly, pursuant to the provisions of 21 U.S.C. § 824(d) and 21 C.F.R. § 1301.36(e), and the authority granted me under 28 C.F.R. § 0.100, DEA COR Nos. ███████████████████████ are hereby suspended, effective immediately. Such suspension shall remain in effect until a final determination is reached in these proceedings.

PURSUANT to 21 U.S.C. § 824(f) and 21 C.F.R. § 1301.36(f), the Special Agents and Diversion Investigators of the DEA who serve this Order to Show Cause and Immediate Suspension of Registration are authorized to place under seal or to remove for safekeeping all controlled substances that Woodfield possesses pursuant to the registrations that I have herein suspended. The said Agents and Investigators are also directed to take into their possession DEA COR Nos. ███████████████████████ and any unused controlled substance ordering forms.

THE following procedures are available to Woodfield in this matter:

1. Within 30 days after the date of receipt of this Order to Show Cause and Immediate Suspension of Registration, Woodfield may file with DEA a written request for a hearing in the form set forth in 21 C.F.R. § 1316.47. *See* 21 C.F.R. § 1301.43(a). If Woodfield fails to file such a request, the hearing shall be cancelled in accordance with paragraph 3, below.

14

Virtus_DEA000217

2. Within 30 days after the date of receipt of this Order to Show Cause and Immediate Suspension of Registration, Woodfield may file with DEA a waiver of hearing together with a written statement regarding Woodfield's position on the matters of fact and law involved. *See* 21 C.F.R. § 1301.43(c).

3. Should Woodfield decline to file a request for a hearing, or should Woodfield request a hearing and then fail to appear at the designated hearing, Woodfield shall be deemed to have waived the right to a hearing and DEA may cancel such hearing, and I may enter my final order in this matter without a hearing based upon the evidence presented to me. *See* 21 C.F.R. §§ 1301.43(d) and 1301.43(e).

Requests for hearing should be filed by email with the Office of Administrative Law Judges at the following address: ECF-DEA@dea.gov, with a copy simultaneously provided to the Government at the following address: DEA.Registration.Litigation@dea.gov. Other correspondence concerning this matter, including requests referenced in paragraphs 1 and 2 above, should be addressed to the Hearing Clerk, Office of Administrative Law Judges, Drug Enforcement Administration, 8701 Morrissette Drive, Springfield, VA 22152. Matters are deemed filed upon receipt by the Hearing Clerk. *See* 21 C.F.R. § 1316.45. A copy of the same shall also be served separately on Government counsel, John E. Beerbower, and be addressed to the Office of Chief Counsel, Diversion and Regulatory Litigation, 8701 Morrissette Drive, Springfield, VA 22152.

Anne Milgram
Administrator
Drug Enforcement Administration

cc: Hearing Clerk, Office of Administrative Law Judges
    John E. Beerbower, Counsel for the Government

15

**FILED UNDER SEAL**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Virtus Pharmaceuticals, LLC

*Plaintiff*,

v.

Merrick Garland, *et al.*,

*Defendants*.

Case No. 1:21-cv-02308

### DECLARATION OF STACY HARPER-AVILLA

I, Stacy Harper-Avilla, under the penalty of perjury, declare and state as follows:

1.  I am currently employed as Section Chief for the UN Reporting and Quota Section, Diversion Control Division, Drug Enforcement Administration (DEA). I have been employed in that capacity for approximately three years. I have been employed by DEA for approximately 13 years.

2.  I am submitting this Declaration in support of the Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Temporary Restraining Order in the above-captioned matter. Based on information provided to me in my official capacity and my personal understanding, I am familiar with DEA's quota system as well as the quotas allocated to individual manufacturers for particular controlled substances. The statements contained in this Declaration are known to me through my involvement in the quota process, my review of DEA records and databases, and through information provided to me by DEA personnel under my supervision.

### An Overview of the Quota System

3.  Pursuant to the Controlled Substances Act (CSA), DEA is required to establish production quotas for Schedule I and II controlled substances and List I Chemicals designed "to provide

for the estimated medical, scientific, research, and industrial needs of the United States, for

lawful export requirements, and for the establishment and maintenance of reserve stocks." 21

U.S.C. § 826(a)(1).[1] The purpose of the Quota System is to limit the quantity of Schedule I

and II controlled substances that are manufactured while also providing for adequate

inventories to meet the legitimate needs for those controlled substances. Quotas are generally

calculated in metric weight of the controlled substance and are stated in terms of grams base

ingredient (grams/base).

4. As a general matter, and as discussed in more detail below, DEA sets the following

categories of quota:

    a. **The Aggregate Production Quota (APQ)**: This quota is the annual national production

    quota. The APQ governs the amount of a drug that can be manufactured in the United

    States in a given year.

    b. **The Individual Manufacturing Quota (IMQ)**: This quota is the amount of the APQ

    that is allocated among the various drug manufacturers in the United States. The IMQ is

    set to ensure adequate competition and supply in the market.

    c. **The Procurement Quota**: This quota specifically concerns drug manufacturers who

    formulate end product from bulk quantities of controlled substances. This quota sets the

    amount of bulk product that these manufacturers can procure. The Procurement Quota

    ensures that the manufacturer is obtaining the bulk product in an appropriate relationship

    to the amount of end product that it is manufacturing.

---

[1] The Attorney General's authority under the CSA has been delegated to the DEA Administrator. 28 C.F.R.
§ 0.100.

Virtus_DEA000220

**FILED UNDER SEAL**

5.  Each of the three quotas described above can be increased or decreased during the year, based on application from a manufacturer and/or changes in demand or supply.

6.  **The Aggregate Production Quota (APQ)**: For most Schedule I and II controlled substances, DEA determines an APQ for each basic class of controlled substances. *See* 21 C.F.R. § 1303.11.[2] The APQ serves as the upper limit for the national manufacturing of that particular basic class of controlled substances for any given year.

7.  In determining the APQ, DEA considers a number of enumerated factors set forth in the regulations. *See* 21 C.F.R. § 1303.11(b). The APQ can be adjusted during the year based, *inter alia*, on changes in the demand for that basic class or the existing market's ability to respond to that demand change within the current APQ. *See* 21 C.F.R. § 1303.13.

8.  The APQ for each basic class of controlled substance, as well as any APQ adjustments, are published in the Federal Register on an annual basis. *See* 21 C.F.R. §§ 1303.11(c) & 1303.13(c).

9.  **The Individual Manufacturing Quota (IMQ)**: DEA also establishes Individual Manufacturing Quotas (IMQ) for each manufacturer registered to manufacture a basic class of Schedule I or II controlled substance and applies for such a quota. 21 C.F.R. § 1303.21. The IMQ serves as the maximum amount of that basic class of controlled substances that the individual manufacturer may manufacture in a particular year.

10. The IMQ is calculated based on a manufacturer's (estimated) actual annual use of a particular controlled substance for that calendar year. Future annual use is determined based on actual

---

[2] The "basic class" of drug is the drug product that has been scheduled by DEA, *e.g.*, oxycodone, hydrocodone, or levorphanol. *See* 21 C.F.R. § 1300.01(b) (defining "basic class"); *see also* 21 C.F.R. § 1308.12 (Schedule II controlled substances).

3

past use (for existing manufacturers) or estimated use (for new manufacturers). *See* 21 C.F.R.

§ 1303.23(a) & (b).

11.  The IMQ is adjusted based upon the manufacturer's existing permitted inventory. Each

manufacturer is permitted to maintain an inventory of each basic class of controlled

substances equal to 50 percent of its average use over the last two calendar years (for existing

manufacturers) or 50 percent of its future estimated annual use (for new manufacturers). *See*

21 C.F.R.§ 1303.24(a).

12. By considering the manufacturer's actual annual use in combination with its existing

permitted inventory, DEA ensures that a manufacturer is allocated a sufficient IMQ so that it

has available up to 150 percent of its actual need in any given year.

13. A manufacturer may apply for an increase in its IMQ during the year, and DEA may grant

that request. *See* 21 C.F.R. § 1303.25. Similarly, DEA may reduce a manufacturer's IMQ if

necessary to prevent the total aggregate IMQs granted to all manufacturers (as well as all

import permits) from exceeding the APQ. *See* 21 C.F.R. § 1303.26.

14. **The Procurement Quota**: DEA also establishes annual Procurement Quotas for those

manufacturers who manufacture finished dosage forms of a controlled substances from a

bulk quantity of the active pharmaceutical ingredient (API). The Procurement Quota

authorizes (and regulates) a manufacturer's acquisition of bulk quantities of a basic drug

class "for the purpose of manufacturing such basic class into dosage forms or into other

substances." 21 C.F.R. § 1303.12(a).

15. The Procurement Quota serves to regulate the amount of raw material (that is a controlled

substance) obtained by a manufacturer in order to ensure a proper relationship between the

4

amount of controlled substance obtained and the amount of final product manufactured. The Procurement Quota is allocated based on a manufacturer's "past use, his estimated needs, and the total quantity of such class that will be produced." 21 C.F.R. § 1303.12(c). A manufacturer's Procurement Quota can be adjusted during the year by DEA. *See* 21 C.F.R. § 1303.12(d).

16. Bulk quantities of API are produced by manufacturers who are registered with DEA as bulk manufacturers in that particular basic class of controlled substance. The aggregate total bulk manufacturer's IMQ for a particular basic class of controlled substances is determined from the aggregate total of all Procurement Quotas.

17. **Highly Sensitive Information:** DEA monitors the use of the above-described quotas, in part, by relying on information maintained in DEA's Automation of Reports and Consolidated Orders System (ARCOS). ARCOS is an automated, comprehensive drug reporting system that monitors the flow of certain controlled substances from their point of manufacture through commercial distribution channels to point of sale or distribution at the dispensing/retail level. All transactions involving Schedule I and II controlled substances must be reported to ARCOS by the manufacturer or distributor. *See generally* 21 U.S.C. § 827(d).

18. ARCOS data, each manufacturer's IMQ, and each manufacturer's Procurement Quota are not public information, and DEA treats all this information as highly sensitive.

5

FILED UNDER SEAL

### The Levorphanol Supply

19. The initial 2021 established APQ for levorphanol was 26,495 grams/base. Order, 85 Fed. Reg. 76,604 (2020).

20. According to DEA records, ███████████████████████████████████ ████████████████████ Notices of applications to be registered as a bulk manufacturer are published in the Federal Register.

21. According to FDA's Orange Book (FDA's official database of FDA-approved drugs), there are five FDA-approved applicant holders for levorphanol, including Virtus Pharmaceuticals. All five of these companies have an approved dosage strength of levorphanol 2mg. Two of these companies also have an approved dosage strength of levorphanol 3mg.[3]

22. 

23. According to DEA's records, the allocated quotas – both for levorphanol in dosage form and for levorphanol API – exceed current market demand.

24. ██████████████████████████████████████████████
    ████████████████████████████████

    a. ████████████████████████████████████████
       ████████████████████████████████████

---

[3] FDA *Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations*, *available at* https://www.accessdata.fda.gov/scripts/cder/ob/index.cfm (last accessed August 31, 2021).

[4] A drug's National Drug Code is a unique 10 or 11–digit number that identifies the manufacturer and the product, among other things. Manufacturers submit a list of all of their drugs to the FDA and update that list twice a year. *See generally* 21 C.F.R. § 207.33 ("What is the National Drug Code (NDC), how is it assigned, and what are its requirements?").

Virtus_DEA000224

b. 

25.

26.

⁵

27.

---

⁵

Virtus_DEA000225

**FILED UNDER SEAL**

28. 

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

STACY HARPER-AVILLA
Digitally signed by STACY HARPER-AVILLA
Date: 2021.09.03
16:08:38 -04'00'

Stacy Harper-Avilla

8

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| Virtus Pharmaceuticals, LLC<br><br>*Plaintiff,*<br><br>v.<br><br>Merrick Garland, *et al.*,<br><br>*Defendants*. | Case No. 1:21-cv-02308 |

## DECLARATION OF MICHAEL C. MILLS

I, Michael C. Mills, under the penalty of perjury, declare and state as follows:

1. I am currently employed as a Group Supervisor with the United States Drug Enforcement Administration (DEA). I have been a Group Supervisor for approximately three years, and have been employed by DEA for approximately 11 years. I am currently stationed with DEA's Houston Field Division.

2. I am submitting this Declaration in support of the Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Temporary Restraining Order in the above-captioned matter. Based on the information provided to me in my official capacity, I am familiar with the administrative investigation into Woodfield Distribution (Woodfield); the service of the Order to Show Cause and Immediate Suspension of Registration (OTSC/ISO) on August 11, 2021; and the sealing and maintenance by DEA of the controlled substances possessed by Woodfield. The statements contained in this Declaration are known to me as a result of my own involvement in the decision-making process or have been provided to me by other enforcement personnel.

**Administrative Investigation**

3.  As part of its administrative investigation into Woodfield, DEA became aware that Virtus was one of the customers for whom Woodfield purportedly acted as a third party logistics provider (3PL). DEA understood that as a 3PL, Woodfield provided Virtus supply chain operation services, including warehousing, storage, and distribution of Virtus's controlled substances. The contract between Virtus and Woodfield, which DEA obtained in the course of its administrative investigation, is attached to this declaration as **Exhibit A**.

4.  On April 1, 2021, as part of its investigation into Woodfield, the DEA Houston Field Division issued an administrative subpoena to Virtus Pharmaceuticals (Virtus). The purpose of the administrative subpoena was to obtain additional evidence from Virtus to support the administrative investigation into Woodfield.

5.  Between March 29, 2021, and July 7, 2021, DEA Diversion Investigator (DI) Ian Brecht – a Diversion Investigator whom I supervise – corresponded via phone and email with Virtus's attorney, David Schumacher of Hooper, Lundy & Bookman, P.C., regarding DEA's administrative subpoena to Virtus. In response to the subpoena, Virtus provided DEA multiple datasets focused on sales and concealed shortages or potential diversion of controlled substances involving Woodfield.

6.  At one point during the email correspondence, Mr. Schumacher asked DI Brecht for the contact information of the Assistant United States Attorney (AUSA) assigned to the case. In response, DI Brecht informed Mr. Schumacher that "[t]he information requested from Virtus is tied to multiple cases each with different AUSAs and DOJ attorneys from various districts so I would

2

not be able to share one single contact." The e-mail correspondence between DI Brecht and Mr. Schumacher is attached to this declaration as **Exhibit B**.

### Service of the OTSC/ISO

7.  On August 4, 2021, the DEA Administrator issued an Order to Show Cause and Immediate Suspension of Registration (OTSC/ISO) to Woodfield.

8.  On August 11, 2021, DEA Special Agents and Diversion Investigators from the DEA Houston Field Division served the OTSC/ISO on Woodfield. Upon serving the OTSC/ISO, DEA sealed all of the controlled substances in Woodfield's possession pursuant to the above-noted Certificates of Registration by directing Woodfield to deliver those controlled substances to authorized agents of DEA as per 21 C.F.R. § 1301.36(f)(1). DEA sealed and removed approximately 754 pallets of controlled substances – or approximately 200 million dosage units – which include, among others, levorphanol (a Schedule II opioid); codeine phosphate (a Schedule II opioid); phendimetrazine (a Schedule III stimulant); tramadol (a Schedule IV opioid); phenobarbital (a Schedule IV barbiturate); guaifenesin with codeine (a Schedule V cough suppressant); clobazam (a Schedule IV benzodiazepine); and quazepam (a Schedule IV benzodiazepine).

9.  Between August 11, 2021, and August 13, 2021, the DEA Houston Field Division removed these sealed controlled substances from the Woodfield facilities for storage and safekeeping. The controlled substances were transported by the DEA Houston Field Division on 29 tractor-trailers and five box trucks to four separate, undisclosed DEA facilities.

Virtus_DEA000229

**Hardships with Releasing Millions of Dosage Units of Sealed Controlled Substances**

10. DEA has removed and sealed approximately 200 million dosage units of controlled substances for storage and safekeeping pursuant to the OTSC/ISO issued to Woodfield.

11. As an initial matter, DEA cannot release any controlled substances to Virtus because Virtus is not registered with DEA to handle controlled substances. If ordered to do so, DEA can only release the controlled substances to an entity registered with DEA to handle the controlled substances at issue. Due to the large quantity of controlled substances placed under seal, their storage in multiple secure DEA facilities, and the unique circumstances of this case, any release of the controlled substances to any registered entity would present a significant hardship and challenge for DEA.

12. *First*, allowing any registered distributor to pick up the controlled substances at issue from DEA's facilities would impose significant operational burdens and require substantial resources from DEA.

13. The precise locations of DEA's facilities are sensitive law enforcement information. DEA's facilities store a multitude of controlled substances and other evidence, associated not only with this OTSC/ISO, but also with a host of other DEA cases. Disclosing the precise locations of these facilities to any entity who is not associated with DEA would place all of the other evidence DEA has stored in its facilities for safekeeping at significant risk.

14. To mitigate this risk in the event of a disclosure, multiple DEA personnel would have to take time out of their other investigatory duties to supervise any non-DEA personnel who would pick up the sealed controlled substances from DEA's facilities.

4

15. ***Second***, requiring DEA to transport the sealed controlled substances to another DEA-registered entity would also impose significant burdens. Due to the quantity of sealed controlled substances removed, and their storage at multiple DEA facilities, DEA would need to fund multiple trucks and drivers to transport the at-issue controlled substances to another registered DEA entity. Additionally, according to DEA policies and procedures, a substantial number of DEA personnel would be required to travel to escort and guard the transporting trucks while they remain in DEA custody, which would separate these personnel from their other investigatory duties.

16. Furthermore, DEA would be potentially liable for any thefts or losses that occur during transport. And if there are multiple DEA-registered entities to whom DEA would have to deliver the at-issue controlled substances, the financial and resource burdens of such transport increase substantially.

17. ***Third***, whether DEA is tasked with transporting the controlled substances or is required to open its facilities for a registered entity to retrieve them, DEA would experience significant operational and logistical challenges.

18. Currently, the levorphanol and phendimetrazine products removed from Woodfield are stored across three different DEA facilities. Moreover, these levorphanol and phendimetrazine products are packaged in multiple pallets shared with other controlled substances not at issue. Retrieving the levorphanol and phendimetrazine would require DEA personnel to pull out hundreds of pallets from each different facility to separate out the levorphanol and phendimetrazine for release.

5

19. In addition, requiring DEA to release the controlled substances would essentially task DEA with some of the drug distribution functions DEA is supposed to regulate, but not necessarily perform. For instance, in the course of distributing controlled substances, all distributors registered with DEA must design and operate a system to disclose suspicious orders of controlled substances. 21 C.F.R. § 1301.74(b). As a result, before authorizing any controlled substances for release, DEA would be required to perform suspicious order monitoring functions to ensure that none of the controlled substances it releases have the potential for being diverted to illicit channels. In this case, DEA does not have the capacity to perform these functions for the levorphanol and phendimetrazine. It is also not clear DEA should perform these suspicious order monitoring functions, at least in this situation, as the Controlled Substances Act (CSA) places that burden on the *registrant* to perform. *See* 21 U.S.C. § 832; 21 C.F.R. § 1301.74(b).

20. Moreover, because Virtus is not registered with DEA to handle controlled substances, Virtus is not familiar with and cannot perform these required due diligence and suspicious order monitoring functions itself. To illustrate, one of Virtus's top five levorphanol customers surrendered their DEA registration for cause in June 2021 related in part to their handling of levorphanol.

21. *Finally*, requiring DEA to release controlled substances in this case would create a precedent that would significantly harm DEA's future enforcement capabilities. As a regulator, DEA must treat all registered entities similarly. Requiring the release of controlled substances in this particular instance at the request of a third party not named in the OTSC/ISO creates a precedent whereby DEA will be forced to provide the same treatment to any other third party

6

claiming an ownership interest in any controlled substances sealed pursuant to any OTSC/ISOs

DEA issues in the future. As explained above, this would impose significant operational,

logistical, and resource burdens, impinging on DEA's ability to take future enforcement

actions against non-compliant registrants. These are additional and significant burdens DEA

cannot afford as it exercises its broad authority to prevent the diversion of pharmaceutical

drugs for illicit use.


Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is

true and correct.

MICHAEL
MILLS
Digitally signed by
MICHAEL MILLS
Date: 2021.09.06
13:03:59 -05'00'

Michael C. Mills

7

# EXHIBIT A

Virtus_DEA000234

# EXHIBIT B

Virtus_DEA000249

**From:** Brecht, Ian D
**To:** David S. Schumacher
**Subject:** Re: Virtus Pharmaceuticals
**Attachments:** image001.png
image002.jpg
image003.jpg

John E. Beerbower

Drug Enforcement Administration

Office of Chief Counsel

Diversion and Regulatory Litigation Section

(office) (571) 362-7905

(email) john.e.beerbower@usdoj.gov

Mailing Address: 8701 Morrissette Drive, Springfield, VA 22152

Sent from my iPhone

On Aug 12, 2021, at 10:41 AM, David S. Schumacher <dschumacher@health-law.com> wrote:

Hi Ian – it's David Schumacher, counsel for Virtus Pharmaceuticals. I have an urgent issue that I'd like to discuss with you. Are you free?

Thanks,

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**

DIRECT: +1 617.532.2704   MAIN: +1 617.532.2700   MOBILE: +1 617.688.2398

dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Wednesday, July 7, 2021 4:09 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**EXTERNAL EMAIL MESSAGE**

Excellent! Thanks again!

Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited. If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

---

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Wednesday, July 7, 2021 1:58 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Actually I just received it. It is attached.

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

---

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Wednesday, July 7, 2021 2:13 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Sounds good. Thanks, David.

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information*
*intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination,*
*or other use or action taken upon this information by persons or entities other than the intended recipient is*
*prohibited.  If you are not the intended recipient or believe you received this communication in error,*
*immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Wednesday, July 7, 2021 12:01 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

I have sent it to them for their signature. Let me follow up. I should be able to get this
to you this week.

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and
may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended
recipient, be advised that any dissemination, distribution, or use of the contents of this message is
prohibited. If you have received this message in error, please reply that you received the message in error
and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Wednesday, July 7, 2021 12:53 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hi David,

I wanted to follow up on the Virtus business records affidavit and see if you had a timeline?

Thanks,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

\<image001.png\>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Monday, June 28, 2021 4:33 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

No problem – will get one prepared.

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Monday, June 28, 2021 5:02 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

David,

As a follow-up to our phone conversation, please provide a business records affidavit for the previous Virtus documents produced regarding Woodfield Distribution.

Thank you again,
Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Monday, May 31, 2021 2:26 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Ian,

I checked with Virtus, and here are the answers I received to your questions:

Does Virtus have records for the quantity and type of controlled substances previous and currently stored at Woodfield during a specific timeframe, or just dates that orders are received and fulfilled?



Also, can you please clarify what the column "PGI Date" represents? Is this the date controlled substances were shipped, received, or other?

PGI Date is the date a product was shipped outbound to the customer from Woodfield. This is also the date the customer receives an invoice.

I hope this helps. Let me know if you need additional information.

David


**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Monday, May 24, 2021 4:13 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>; John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hi David and John,

I hope this message finds you well. First off, thank you for your previous responses and documents. I am following up with another question posed by our counsel concerning the previous Administrative Subpoena. Does Virtus have records for the quantity and type of controlled substances previous and currently stored at Woodfield during a specific timeframe, or just dates that orders are received and fulfilled? Also, can you please clarify what the column "PGI Date" represents? Is this the date controlled substances were shipped, received, or other?

Thank you in advance for your clarification. Please feel free to call me with any questions.

Regards,

Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742
Cell: ▮▮▮▮▮▮

---

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Wednesday, April 21, 2021 9:55 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>; John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

Ian, I think John is out for the rest of day, so he probably won't make the production until tomorrow.

**David S. Schumacher**

---

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

---

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

---

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Wednesday, April 21, 2021 10:54 AM
**To:** John A. Ferrigno <jferrigno@HEALTH-LAW.COM>; David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hi John,

I sent out a link to the USAfx folder this morning. Let me know if you have not received it.

Thanks,
Ian

Virtus_DEA000256

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information*
*intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination,*
*or other use or action taken upon this information by persons or entities other than the intended recipient is*
*prohibited.  If you are not the intended recipient or believe you received this communication in error,*
*immediately notify the sender and destroy the material.*

---

**From:** John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Sent:** Tuesday, April 20, 2021 8:46 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>; David S. Schumacher
<dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

Hello Ian, on the USAFX site I typically will see a folder with the case name when I've
been invited to it. I don't see the folder for this case. Can you please confirm that I've
been invited to the folder. Thank you.

**John A. Ferrigno**
LITIGATION SUPPORT MANAGER

---

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 310.551.8162    MAIN: 310.551.8111    FAX: 310.551.8181
jferrigno@health-law.com | www.health-law.com

---

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and
may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended
recipient, be advised that any dissemination, distribution, or use of the contents of this message is
prohibited. If you have received this message in error, please reply that you received the message in error
and delete or destroy the email and any attachment.

---

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Tuesday, April 20, 2021 9:19 AM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Cc:** John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Virtus_DEA000257

John, thank you in advance for uploading the documents into USAfx.

David – can you please give me a call when you're available? My work cell is ███████-
███ .

Thanks,
Ian

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742



*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Tuesday, April 20, 2021 10:40 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Cc:** John A. Ferrigno <jferrigno@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

Ian, if you could, please inform the AUSAs and trial attorneys that I made this request. In my experience, it is typical for defense counsel to speak with the AUSA on the case.

Separately, I am including John Ferrigno on this message. John is our litigation technology specialist. He has made a number of productions via USAfx, and he will be the person doing it here. Thanks.

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Tuesday, April 20, 2021 10:51 AM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Morning David,

Excellent! USAfx is preferred. Do you want me to set up a USAfx folder?

The information requested from Virtus is tied to multiple cases each with different AUSAs and DOJ attorneys from various districts so I would not be able to share one single contact. Additionally, I have not received permission from our counsel to share their contact information at this time but will direct them to contact you for any questions concerning Virtus.

Thank you,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Tuesday, April 20, 2021 7:47 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Hi Ian,

I have the spreadsheets that we discussed containing Virtus' order history with Woodfield, and additional information. How would you like to receive these? We can produce on Sharefile or USAfx. Also, is there an AUSA assigned to the case? If so, could

you provide contact information?

Thanks,

David

### David S. Schumacher

### HOOPER, LUNDY & BOOKMAN, P.C.
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Monday, April 12, 2021 12:36 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

You can call my cell ████████

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Monday, April 12, 2021 11:32 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Yes. What's the best number to call?

### David S. Schumacher

### HOOPER, LUNDY & BOOKMAN, P.C.
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and

may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Monday, April 12, 2021 12:31 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hi David,

Yes, I'm available tomorrow morning to discuss the subpoena. Are you available at 10:00 AM (central)?

Thanks,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited. If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Monday, April 12, 2021 11:29 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Hi Ian. Do you have a moment tomorrow to discuss the Virtus subpoena? If so, let me know what times work.

Thanks very much.

David

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and
may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended
recipient, be advised that any dissemination, distribution, or use of the contents of this message is
prohibited. If you have received this message in error, please reply that you received the message in error
and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Thursday, April 1, 2021 4:10 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

David,

Records should be sufficient at this time. Please include a certification of records with
Virtus' response. Again, I'm happy to answer any questions that may arise while
compiling the requested information.

Thank you,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information
intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination,
or other use or action taken upon this information by persons or entities other than the intended recipient is
prohibited.  If you are not the intended recipient or believe you received this communication in error,
immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Thursday, April 1, 2021 3:08 PM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

OK. Do you need testimony, or will the records be sufficient?

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704   MAIN: 617.532.2700   MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Thursday, April 1, 2021 2:54 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

David,

Thank you for your patience and impeccable timing. Please see the attached subpoena. Let me know if you or your client have any questions.

Respectfully,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited.  If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Thursday, April 1, 2021 1:43 PM

**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

No rush on our end, Ian. You know where to find me.

David

### David S. Schumacher

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** Brecht, Ian D <Ian.D.Brecht@usdoj.gov>
**Sent:** Thursday, April 1, 2021 2:36 PM
**To:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Subject:** RE: Virtus Pharmaceuticals

**\*\*EXTERNAL EMAIL MESSAGE\*\***

Hello Mr. Schumacher,

I apologize for the delayed response. I received your email correspondence and will send you the aforementioned subpoena when it is available to me.

Thank you,

**Ian D. Brecht**
Diversion Investigator
Drug Enforcement Administration
Houston Division Office
Office: 571-324-7742

<image001.png>

*NOTICE: This is an official government communication that may contain privileged or sensitive information intended solely for the individual or entity to which it is addressed. Any review, retransmission, dissemination, or other use or action taken upon this information by persons or entities other than the intended recipient is prohibited. If you are not the intended recipient or believe you received this communication in error, immediately notify the sender and destroy the material.*

**From:** David S. Schumacher <dschumacher@HEALTH-LAW.COM>
**Sent:** Thursday, April 1, 2021 9:03 AM
**To:** Brecht, Ian D <IDBrecht@dea.usdoj.gov>
**Subject:** RE: Virtus Pharmaceuticals

Investigator Brecht,

Just confirming that you received this email and that you are aware that I represent Virtus Pharmaceuticals, so they should not be contacted without going through me. Thanks very much.

**David S. Schumacher**

**HOOPER, LUNDY & BOOKMAN, P.C.**
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398
dschumacher@health-law.com | www.health-law.com

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.

**From:** David S. Schumacher
**Sent:** Monday, March 29, 2021 12:34 PM
**To:** Ian.D.Brecht@usdoj.gov
**Subject:** Virtus Pharmaceuticals

Investigator Brecht,

It was nice to speak with you just now. As we discussed, I am authorized to accept service of the subpoena on behalf of Virtus Pharmaceuticals. Feel free to send it to me vial email.

Thanks,

David

**David S. Schumacher**

<image002.jpg>

**HOOPER, LUNDY & BOOKMAN, P.C.**
470 Atlantic Avenue, 1201
Boston, MA 02210
DIRECT: 617.532.2704    MAIN: 617.532.2700    MOBILE: 617.688.2398

dschumacher@health-law.com | www.health-law.com

<image003.jpg>

BOSTON | DENVER | LOS ANGELES | SAN DIEGO | SAN FRANCISCO | WASHINGTON, DC

Disclaimer: This email, including attachments, is intended solely for the use of the intended recipient and may be confidential, proprietary, or protected by any applicable privilege. If you are not the intended recipient, be advised that any dissemination, distribution, or use of the contents of this message is prohibited. If you have received this message in error, please reply that you received the message in error and delete or destroy the email and any attachment.